140 N.J. Super. 110 (1976)
355 A.2d 221
STATE OF NEW JERSEY, PLAINTIFF,
v.
RICHARD WINTERS, DEFENDANT.
Superior Court of New Jersey, Middlesex County Court, Law Division (Criminal).
March 1, 1976.
*113 Mr. Lewis White, Assistant Prosecutor, argued the cause for the State (Mr. C. Judson Hamlin, Prosecutor of Middlesex County, attorney).
Mr. Theodore W. Geiser argued the cause for defendant (Messrs. McElroy, Connell, Foley and Geiser, attorneys).
COHEN, J.C.C.
Defendant was indicted for perjury allegedly occurring during his testimony in the trial of a civil cause. He moves for dismissal of the indictment. His sole substantial ground is that the allegedly false testimony was not "material," and therefore the charge of perjury will not lie.
Two things are clear. The first is that, to support a charge of perjury, as opposed to false swearing, the testimony not only must be knowingly false, but also must be material to the issues before the forum in which it was given. Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929); State v. Sullivan, 24 N.J. 18 (1957), cert. den. 355 U.S. 840, 78 S.Ct. 52, 2 L.Ed.2d 51 (1957). The second is that the question of materiality is for the court as a matter of law, and not a question of fact for the jury. State v. Lupton, 102 N.J.L. 530 (Sup. Ct. 1926); Gordon v. State, 48 N.J.L. 611 (E. & A. 1886).
Two things are unclear, both for the reasons that New Jersey courts have not had recent occasion to address them. First is the propriety of pretrial determination of the motion to dismiss. Second is the meaning of "materiality" as a necessary element of the crime of perjury.
Pretrial disposition of the motion seems proper. The materiality of the disputed testimony involves its setting in the context of a civil cause already tried. Now available for this court's review are the pleadings and the full transcript *114 of the civil trial. There is nothing that would be presented at the perjury trial that would further inform this court on the issue of materiality, since the proofs on that issue would not normally emerge before the jury. The State has not objected to the motion as premature. No purpose would be served by putting the State and defendant to a criminal trial before considering a possibly dispositive issue that is now fully ripe for decision. It might be otherwise if the State claimed to have oral testimony to present at trial on an issue properly before the jury that also touched the issue of materiality. Cf. State v. Shipley, 10 N.J. Super. 245, 250 (App. Div. 1950).
Another matter needs facing. Some of the old cases say that the mere averment of materiality in the indictment is sufficient to defeat a motion to dismiss. See, e.g., State v. Voorhis 52 N.J.L. 351 (Sup. Ct. 1889); State v. Beard, 25 N.J.L. 384 (Sup. Ct. 1856). If materiality is an essential element of the offense of perjury, it is hard to see how mere assertion forecloses further inquiry. It could be so only if materiality were handled as a matter for factual determination by the jury or for legal decision on the basis of trial evidence. Perhaps the Voorhis and Beard courts so conceived the issue. To the extent they did so, they no longer accurately state the law. The issue is a legal one and ought to be considered before trial if, as here, it is ripe for decision.
The matter arises here in the setting of a civil action for damages for breach of contract. Toto Bros., Inc., an earth materials excavator, sought payment from Hess Brothers, Inc., a road builder, for earth materials sold and delivered pursuant to a Hess purchase order. The existence of a contract was not in issue; its proper interpretation was. The unit price of $2.15 a yard was not in question; the quantity actually delivered was hotly disputed.
Toto contended that its contractual duty was to deliver truckloads of 17 cubic yards each to the site where Hess was constructing a highway for the New Jersey Department of Transportation. Toto further argued that it delivered the *115 quantities it billed for; that there was no oral modification of the original agreement, and that it was unpaid by more than $100,000. Hess's position was that Toto continually delivered short loads; that, when confronted during the course of its nonconforming deliveries, Toto orally agreed to make an equitable adjustment for all of its shortages, and that it was fully paid for the materials it actually delivered.
Toto's principal witness to the original agreement and its performance was Anthony Toto, Jr. He testified that he delivered full loads as required; that Hess had people on the job receiving the deliveries without complaint; that he never agreed to make any adjustment to his billing, and that Hess simply stopped paying him one day without justification.
Hess' principal witness was its general superintendent Richard Winters, defendant here. Generally, his position was that he made constant complaints of shortages to Anthony Toto, Jr., who agreed to adjust final billings in the future after receipt of the Department of Transportation's measurement of earth materials in place. Such measurements, according to Winters, eventually showed shortages in the neighborhood of 20%.
The matter apparently came to a head in October 1973 after Toto had delivered some 16,000 truckloads of material. Toto had something over $100,000 in unpaid billings at the time. Winters advised Toto of the shortages he said were revealed by the Department of Transportation's measurements, and the resulting calculated shortages almost equalled Toto's unpaid billings. The outcome was Toto's refusal to make further deliveries and initiation of the civil action.
In describing the course of dealings between Toto and Hess, Winters testified that he knew Toto was making short deliveries but that he relied on the promise of an adjustment and had to continue to accept nonconforming performance to keep the road-building job going. He testified that Hess had been paying Toto bi-monthly against billings until August 1973. In that month, said Winters, the State's payments to *116 Hess stopped as a result of some internal accounting problem. He said he described the problem to Toto, who agreed to wait for his money. During the months of August and September, Winters went on, the State failed to make its payments, and for that reason Hess did not pay Toto. In October the final confrontation took place between Hess and Toto on the question of shortages. The testimony relating to the State's failure to pay Hess and Hess' resulting failure to pay Toto arose almost exclusively on Winters' cross-examination.
The indictment charges that in August and September the State did, in fact, make substantial payments to Hess and that Winters lied when he told the jury the contrary. There was evidence brought before the jury in rebuttal that the State did make sizable payments to Hess in August and September.
The trial court gave an instruction on the principal of falsus in uno, falsus in omnibus, specifically related to Winter's testimony. The jury, after a lengthy and technical trial that included key areas whose resolution requires credibility findings, found rather quickly for plaintiff Toto in the full amount of its claim.
The meaning of "materiality" as an element of perjury has not recently been explored in New Jersey. Certainly, it is something other than materiality in the evidentiary sense. United States v. Whitlock, 456 F.2d 1230 (10 Cir.1972). See American Process Co. v. Pensauken Brick Co., 78 N.J.L. 658 (E. & A. 1910). See also Evid. R. 1 (2), 30, 53 and 55.
Some hints may be found in the old cases. In State v. Voorhis, 52 N.J.L. 351 (Sup. Ct. 1889), defendant had testified in a civil action that plaintiff bank did not charge the borrower annual interest at a rate greater than 6%. The indictment charged that the testimony was material and willfully false. The issues in the civil case are not revealed in the opinion, but it is apparent that usury was one of them. That being so, defendant's false testimony went to the heart of an affirmative *117 defense. The testimony was held to be material under the test that "the testimony will be deemed material whenever it tends directly or circumstantially to prove the matters in issue." 52 N.J.L. at 356.
In Braeutigam v. State, 63 N.J.L. 38 (Sup. Ct. 1899) a false affidavit was held not to support a perjury indictment where it was submitted in the trial of a civil cause and was not admissible on the merits but only in connection with a pleading matter.
State v. Sweeten, 83 N.J.L. 369 (Sup. Ct. 1912), involved allegedly false testimony before a grand jury bearing directly on the question of whether official misconduct had taken place. It was patently material to the grand jury's inquiry. Since a grand jury proceeding is by nature open-ended and not defined and limited by pleadings, as a civil trial is, the standard of materiality in such proceedings may be different. See, e.g., United States v. Carson, 464 F.2d 424 (2 Cir.1972), cert. den. 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972).
In State v. Snyder, 93 N.J.L. 18 (Sup. Ct. 1919), aff'd 94 N.J.L. 277 (E. & A. 1920), false testimony was held material in a suit for alienation of affections. Defendant in that suit testified that he had discovered his wife in an act of adultery. The materiality, according to the court, lay in the testimony's bearing on the issue of damages, i.e., the extent to which the retention of the husband's affections was of pecuniary value to plaintiff wife.
A criminal defendant who testified falsely that he had not voluntarily and intentionally signed a confession, and who was thereupon acquitted, was held to have testified falsely to a material fact in State v. Rose, 3 N.J. Misc. 1002, 130 A. 461 (Sup. Ct. 1925). Similarly, a State's witness who falsely swore he could not identify the actors in a criminal event he had seen was held to have testified falsely to a material fact in State v. Scott, 12 N.J. Misc. 278, 171 A. 311 (Sup. Ct. 1934). In none of the opinions in Braeutigam, Sweeten, Snyder, Rose and Scott did the court explain its concept *118 of materiality. Only in Voorhis did a definition of the term appear.
Certainly, testimony is material which tends to prove one of the central issues of the case. Thus, false testimony as to the identity of criminal actors, or the extent of civil damages, or the existence of unlawful interest charges that could excuse repayment of a loan, must be material. Moreover, testimony establishing or denying matters which themselves bear crucially on central issues, such as the lawful execution of a confession, is material. But it is unclear how far into collateral issues, which might have a bearing on the ultimate outcome of the trial, testimony may go and still be material. The federal cases, collected in an annotation in 22 A.L.R. Fed. 379 (1975), announce varying approaches in many differing contexts.
At early common law a necessary element of perjury was the intent to mislead the court or jury. After statutory codification the element of intent to mislead was replaced by the requirement of materiality. State v. Sullivan, 25 N.J. Super. 484 (App. Div. 1953). The common focus of both the common law and the statutory requirements seems to be on the potential effect of the false testimony on the outcome of the judicial proceeding. Perjury, therefore, may be thought of as a form of obstruction of justice, an effort to pervert the judicial process which, if successful, affects the outcome of the proceeding. See State v. Kowalczyk, 4 N.J. Super. 47 (App. Div. 1949), rev'd on other grounds, 3 N.J. 51 (1949). The lesser crime of false swearing does not involve this concept. Sworn intentional falsity is enough. Thus, the requirement of materiality may be satisfied not only by testimony that tends directly or circumstantially to prove an ultimate matter in issue (State v. Voorhis, supra) but also by testimony relating to a collateral matter which, if believed, has the capacity to affect the weight or force of the evidence bearing on an ultimate issue, and therefore has the capacity to influence the tribunal. See, e.g., United States v. Weiler, 143 F.2d 204 (3 Cir.1944), rev'd on *119 other grounds, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945); Blackmon v. United States, 108 F.2d 572 (5 Cir.1939); United States v. Allen, 131 F. Supp. 323 (E.D. Mich. 1955). False testimony bearing solely on credibility may, but need not, be material. Harrell v. United States, 220 F.2d 516 (5 Cir.1955). Cf. United States v. Freedman, 445 F.2d 1220 (2 Cir.1971).
In this case the reason for Hess' stopping payments to Toto in August 1973 was in no sense dispositive of any issue in the case. Similarly, it was of no direct consequence whether Winters lied to Toto about the State's failure to pay in order to induce continued deliveries that he had no intention of paying for. Assuming that Winters used disingenuous means to improve Hess' contractual position with Toto, it was of no legal moment, if the position he sought to attain was one to which Hess was legally entitled. The ultimate question was whether Toto had delivered the earth materials for which it sought payment, and not whether it had been persuaded to do so by Winter's lies. Plainly, therefore, whether or not the State had really stopped paying Hess in mid-1973 did not bear on any ultimate issue in the civil trial.
On the other hand, the credibility of Anthony Toto, Jr. and Richard Winters was of great significance. The jury's view of whether Toto had delivered short loads and whether it had offered to make an adjustment had in the end to depend on their reaction to the two opposing witnesses. They had to choose between the two witnesses' versions in order to reach a verdict. That was obvious at the time Winters was testifying, which is the time as of which the question of materiality must be decided. United States v. Stone, 429 F.2d 138 (2 Cir.1970).
One of the bases upon which juries are constantly instructed they may judge a witness' credibility is that of his apparent candor and frankness on the witness stand. It is equally true that a witness may be judged on the basis of the manner in which he conducted his part of the total transaction *120 out of which the trial arose. A witness who acted deceitfully out of court in the total transaction might well be thought less worthy of belief under oath in the courtroom.
Assuming Winters lied out of court in mid-1973 when he laid his failure to pay Toto on the State's failure to pay Hess, he had a problem. Admitting those lies on the witness stand might well destroy his credibility before the jury. Falsely denying the prior lies would maintain his credibility in court.
If a crucial witness in a civil action falsely denies a course of deceitful conduct toward the other party occurring during the very transaction that produced the trial in which he is testifying, however peripheral his prior deceit may be to the litigated issues, he falsely testifies as to a material fact and may properly be indicted for perjury.
The prosecutor will submit an order denying the defendant's motion.