235 N.J. Super. 506 (1989)
563 A.2d 457
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
THOMAS WHALEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 13, 1989.
Decided August 16, 1989.
*507 Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.
McAlevy & Costello, attorneys for appellant (Patricia K. Costello, on the brief).
Peter N. Perretti, Jr., Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Defendant, a City of Bayonne police officer, was convicted of perjury after a jury trial under State Grand Jury Indictment 148-85-4(2). The court sentenced him to three years probation and community service. He now appeals. The principal issue is whether New Jersey's perjury statute, N.J.S.A. 2C:28-1, *508 unconstitutionally delegates to the trial court the function of determining whether an allegedly false statement is material. N.J.S.A. 2C:28-1b.
The State presented evidence which, if credited, established the following facts. In January 1983, defendant, a Bayonne detective, told the state police that he had an informant who could provide information regarding a loansharking and gambling operation being conducted at a Jersey City luncheonette. On January 19, 1983, two state police detectives met with defendant and his informant, a woman whom defendant introduced as Grace. She told the detectives about a loansharking operation she permitted a man named Red to run from her luncheonette. Grace and defendant also provided other information about the loansharking activities.
The investigation was assigned to the State Police Organized Crime Bureau (Bureau). On January 31, 1983, Detective Place of the Bureau went to Grace's luncheonette. His observations there corroborated the information he had received about the loansharking operation. On February 1, 1983, Place met with Grace Walczyk and defendant at the Hackensack State Police Barracks. Defendant introduced Walczyk as his informant and his girlfriend, and he and Walczyk provided information to Place about the loansharking operation, including a list of debtors and collectors. Place confirmed the information through further investigation.
According to Place, he met with defendant and Grace Walczyk five or six times between February 1 and March 19, 1983 and also met with them after that date. On March 19, 1983, a listening device was placed at Walczyk's luncheonette and, thereafter, Place had daily conversations with Walczyk and met with her twice a week.
Walczyk was called to testify before the State Grand Jury on November 20, 1984 and February 5, 1985. On both occasions Walczyk denied any knowledge of Red's involvement in loansharking activity and denied having given information to Place or to any other law enforcement authorities concerning the *509 loansharking activities. As a result of her testimony, the State presented evidence of Walczyk's perjury and false swearing to the Grand Jury on October 21, 1985. Defendant was called as a witness. He denied that Walczyk participated in the initial meeting with state police detectives, acknowledged that he had obtained information from Walczyk without her knowledge but denied that she was present at any of his meetings with Place.
Defendant was charged with perjury in a one-count indictment which alleged that defendant was called as a witness before the State Grand Jury inquiring into perjury and false swearing by Grace Walczyk, that "it then and there became material upon the hearing of the said matter to inquire among other things, whether the said THOMAS WHALEN and Grace Walczyk met with New Jersey State Police Officers in the first half of 1983" and further alleged that "in reference to the aforesaid material matters ... Thomas Whalen then and there before the State Grand Jury, not believing his answers to be true, said swore and gave in evidence, among other things, in substance and to the effect that he and Grace Walczyk did not meet with New Jersey State Police Officers."
N.J.S.A. 2C:28-1a. and b. provide:
2C:28-1. Perjury
a. Offense defined. A person is guilty of perjury, a crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.
b. Materiality. Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding or the disposition of the matter. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material is a question of law.
The predecessor perjury statute, N.J.S.A. 2A:131-1 et seq., did not allocate the materiality issue to judge or jury.[1] However, in New Jersey the issue of materiality historically has been allocated to the court. Gordon v. State, 48 N.J.L. 611, 612 (E. *510 & A. 1886) ("[w]hether the evidence was material or not was a question entirely for the court, and not at all for the jury"); State v. Lupton, 102 N.J.L. 530, 534 (Sup.Ct. 1926) ("[i]t is settled law that on a trial for perjury, the question whether evidence is material to the issue is solely for the court to determine and not for the jury"); accord State v. Molnar, 161 N.J. Super. 424, 450 (App.Div. 1978), rev'd in part on other grounds, 81 N.J. 475 (1980); State v. Winters, 140 N.J. Super. 110 (Cty.Ct. 1976)[2].
Materiality is decided by the trial judge in the great majority of American jurisdictions, see generally Annotation, "Materiality of Testimony Forming Basis of Perjury Charge As Question for Court or Jury in State Trial," 37 A.L.R. 4th 948 (1985), including the federal courts. In Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929), the Court discussed materiality in the context of a contempt of Congress conviction.
The question of pertinency under § 102 was rightly decided by the court as one of law. It did not depend upon the probative value of evidence. That question may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime. Upon reasons so well known that their repetition is unnecessary it is uniformly held that relevancy is a question of law. Greenl. Ev. 13th ed. § 49; Wigmore, Ev. §§ 2549, 2550. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court. Carroll v. United States (C.C.A.2d) 16 F. (2d) 951; United States v. Singleton (D.C.) 54 Fed. 488; Cothran v. State, 39 Miss. 541, 547.
The reasons for holding relevancy and materiality to be questions of law in cases such as those above referred to apply with equal force to the determination of pertinency arising under § 102. The matter for determination in this case was whether the facts called for by the question were so related to the subjects covered by the Senate's resolutions that such facts reasonably could be said to be "pertinent to the question under inquiry." It would be incongruous and contrary to well-established principles to leave the determination of such a matter to a jury. Interstate Commerce Commission v. Brimson, 154 U.S. 447, 88 L.Ed. 1047, 4 Inters.Com.Rep. 545, 14 Sup.Ct.Rep. 1125; Horning v. District of Columbia, 254 U.S. 135, 65 L.Ed. 185, 41 Sup.Ct.Rep. 58. [Id. 279 U.S. at 298-299, 49 S.Ct. at 273-274.]
*511 Accord United States v. Abadi, 706 F.2d 178 (6th Cir.1983), cert. den. 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983).
After careful consideration, we hold that the materiality issue in a section 1001 prosecution [18 U.S.C.A. § 1001] should be treated as a question of law. Although the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe the district court properly treated the issue of materiality as a legal question. [Id. at 180.]
Recently, the Supreme Court in Kungys v. United States, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), involving a denaturalization and deportation proceeding based on alleged material misrepresentations in a visa application, held that materiality was an issue of law and cited and quoted Sinclair and Abadi with approval. Id. at ___, 108 S.Ct. at 1547, 99 L.Ed.2d at 854.
People v. Clemente, 285 App.Div. 258, 136 N.Y.S.2d 202 (App.Div. 1954), aff'd, 309 N.J. 890, 131 N.E.2d 294 (1955) and Commonwealth v. McDuffee, 379 Mass. 353, 398 N.E.2d 463 (Sup.Jud.Ct. 1979) exemplify the minority view that materiality is a jury question. However, unlike New Jersey, the New York and Massachusetts perjury statutes do not designate materiality as a legal issue.
In the United Kingdom, a 1911 statute provided that materiality "is a question of law to be determined by the court of trial." The Perjury Act, 1911, 1 & 2 Geo. 5 c. 6, § 1(6). This statute resolved a split of opinion on the issue. Compare Regina v. Goddard, 2 Fost. & F. 360, 175 Eng.Rep. 1096 (1861) and Regina v. Lavey, 3 Car. & K. 26, 175 Eng.Rep. 762 (1850) (materiality submitted to jury) with Regina v. Courtney, 7 Cox Crim. Cases 111 (Ireland Ct. of Crim.App. 1856) and Regina v. Southwood, 1 Fost. & F. 356, Eng.Rep. 762 (1858) (materiality a legal issue decided by the court).
Defendant does not challenge the correctness of the trial judge's ruling that his allegedly perjured statements were material. He contends that there was evidence to support a contrary finding and that materiality, as an element of the *512 offense, should have been submitted to the jury for final determination. As a corrollary, defendant also contends that submission of materiality to the jury would have entitled him to jury consideration of the included offense of false swearing, a fourth degree crime. N.J.S.A. 2C:28-2. Materiality is not an element of false swearing.
Defendant cites State v. Ragland, 105 N.J. 189 (1986) in support of his contention. Ragland involved the "unique problem that arises when a defendant is charged at the same time with unlawful possession of a weapon and possession of a weapon by a convicted felon." Id. at 193. The latter charge was severed. After guilty verdicts on the unlawful possession of a weapon count and other related charges in the indictment, the severed charge was tried before the same jury. Our Supreme Court ruled that the jury must be instructed to disregard its prior determination that defendant possessed the weapon and must "consider anew the evidence previously admitted." Id. at 195. Failure to do so deprives a defendant of his right to have the jury find "that the State has proved each and every material element of the crime beyond a reasonable doubt." Id. at 194.
Ragland is inapposite because the elements of the crime were jury questions. In the present case, the Legislature has defined materiality as a question of law, thereby allocating its determination to the court.[3] Moreover, this allocation does not ease the State's burden of establishing guilt beyond a reasonable doubt, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), it merely delegates to the court the responsibility of determining whether the burden has been carried as to the element of materiality. In doing so, the Legislature has *513 codified a long-standing principle of New Jersey law; a principle which has received a recent expression of approval by the United States Supreme Court. Kungys v. United States, supra. Thus, we do not confront, in this case, a recent legislative innovation which takes from the jury an element of a crime traditionally submitted to the jury.
In the present case the trial court based its findings of materiality on evidence introduced during the trial in the presence of the jury. That evidence clearly established the materiality of defendant's testimony to the Grand Jury considering Grace Walczyk's perjury.[4]
Defendant also makes the following contentions:
POINT I
THE TRIAL COURT ERRED IN FAILING TO DISMISS THE INDICTMENT AND ERRED IN ADMITTING HIS GRAND JURY TESTIMONY AT TRIAL ON THE BASIS THAT THE DEFENDANT'S FIFTH AMENDMENT RIGHTS WERE VIOLATED BEFORE THE GRAND JURY.
POINT II
THE TRIAL COURT ERRED IN REFUSING TO GRANT THE DEFENDANT ADMISSION INTO PTI.
POINT III
THE TRIAL COURT ERRED IN ALLOWING HEARSAY EVIDENCE BEFORE THE COURT.
POINT IV
THE TRIAL COURT VIOLATED THE DEFENDANT'S 6TH AMENDMENT RIGHTS BY REPEATEDLY INJECTING COMMENTS AND QUESTIONS BEFORE THE JURY ON THE STATE'S BEHALF.
*514 We have carefully considered the record and, in light of applicable law, we conclude that these contentions are clearly without merit. R. 2:11-3(e)(2).
Affirmed.
BAIME, J.A.D., concurring.
I reluctantly concur in this court's affirmance of defendant's conviction. I am constrained to write this separate opinion, however, because I disagree strongly with the proposition that the "materiality" component of a perjury charge is for the court as a matter of law, and not an issue of fact for the jury. In my view, this principle contravenes an accused's Sixth Amendment right to a trial by jury and constitutes an unwholesome and dangerous precedent.
Were I writing on a blank slate, I would hold that, as a matter of federal constitutional law, the question of materiality, a statutory element of the offense of perjury, see N.J.S.A. 2C:28-1a, must be submitted to the jury for its determination. It would be superfluous for me to state my reasons for reaching this conclusion in great detail. My general views on the subject are set forth at length in my dissenting opinion in State v. Breakiron, 210 N.J. Super. 442, 462 (App.Div. 1986), parts of which were later adopted by our Supreme Court. 108 N.J. 591 (1987).
I merely add that the right to a trial by jury has been aptly described as the "most cherished" in the long history of our Anglo-American jurisprudence, having existed since at least the Magna Carta and beyond. State v. Ingenito, 87 N.J. 204, 210 (1981). It has been said that "[m]any strands are interwoven to make up the composite which constitutes the right to trial by jury in a criminal case." Id. at 211. Perhaps the primary strand inheres in the nondelegable and nonremovable responsibility of the jury to decide the facts. It is axiomatic that "[w]hile it is the court's province to decide the law, and to *515 instruct the jury as to the principles ... that govern its deliberations, it is the jury, and the jury alone, that determines the facts." Ibid. In that context, our Supreme Court has said that "[t]he jury's fact-finding function is all-inclusive and encompasses the evaluation of the credibility of witnesses and the weight and worth of evidence." Ibid. See also Baltimore & C. Line v. Redman, 295 U.S. 654, 657, 55 S.Ct. 890, 891, 79 L.Ed. 1636, 1638 (1935); Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 340, 39 L.Ed. 409, 411 (1895).
A rule which arrogates to a judge the power and duty to determine the existence or non-existence of a statutory element is, in my view, wholly offensive to these hallowed constitutional principles. See, e.g., State v. Ragland, 105 N.J. 189, 192-193 (1986); State v. Ingram, 98 N.J. 489, 495 (1985); State v. Collier, 90 N.J. 117, 122 (1982). Nevertheless, as pointed out in Judge D'Annunzio's opinion, the United States Supreme Court has taken the position that "[t]he materiality of what is falsely sworn, when an element of the crime of perjury, is one for the court." Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692, 700 (1929). Although Sinclair v. United States, supra, was a case involving an alleged contempt of Congress and perhaps can be distinguished from the facts and issue before us, the general principle adopted in that decision was recently cited with approval in Kungys v. United States, 485 U.S. 759, ___, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839, 854 (1988). Although I am privileged to respectfully disagree with the pronouncement of the United States Supreme Court, that "privilege does not extend to non-compliance." Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961). See also Kirschner Brothers Oil Co. v. Comn'r of Labor and Industry (App.Div. 1989) (slip opinion at 4). I am thus foreclosed from adopting a rule at variance with the opinions expressed by the nation's highest court.
I have also considered whether our State Constitution provides protections in this area which exceed those guaranteed by its federal counterpart. In a plethora of legal contexts, our *516 Supreme Court has held that our State Constitution offers broader safeguards than found in the United States Constitution. See, e.g., State v. Mollica, 114 N.J. 329, 352-353 (1989); State v. Gerald, 113 N.J. 40, 76 (1988); State v. Novembrino, 105 N.J. 95, 144-145 (1987); Right to Choose v. Byrne, 91 N.J. 287, 300-301 (1982); State v. Hunt, 91 N.J. 338, 353-358 (1982); State v. Alston 88 N.J. 211, 225 (1981); State v. Catania, 85 N.J. 418, 436-439 (1981); State v. Carpentieri, 82 N.J. 546, 572-573 (1980) (Pashman, J. dissenting); State v. Ercolano, 79 N.J. 25, 49 (1979); State v. Slockbower, 79 N.J. 1, 4 (1979). In addition, the doctrine of fundamental fairness, which has roots in our Constitution and common law, has been applied to grant persons procedural protections that may exceed those offered by the due process clause of the Fourteenth Amendment. See, e.g., Matter of Kimber Petroleum Corp., 110 N.J. 69, 81 (1988); State v. Abbati, 99 N.J. 418, 432-435 (1985); State v. Gaffey, 92 N.J. 374, 384-388 (1983); State v. Tropea, 78 N.J. 309, 315-316 (1978); State v. Talbot, 71 N.J. 160, 168 (1976); State v. Gregory, 66 N.J. 510, 513-515 (1975); State v. Kunz, 55 N.J. 128, 131-132 (1969). In a variety of factual settings, our courts have recognized the relevance of independent State constitutional protections and the doctrine of fundamental fairness for the safeguarding of civil rights and interests. See, e.g., State v. Ramseur, 106 N.J. 123, 376-479 (Handler, J. dissenting); State v. 1979 Pontiac Trans Am, Color Grey, 98 N.J. 474, 485-486 (1985); Southern Burlington County NAACP v. Mt. Laurel, 67 N.J. 151, 174-175 (1975). See also Brennan "State Constitutions and the Protection of Individual Rights," 90 Harv.L.Rev. 489, 491 (1977). Undoubtedly, "we have the right to construe our State constitutional provision[s] in accordance with what we conceive to be [their] plain meaning." State v. Johnson, 68 N.J. 349, 353 n. 2 (1981).
Although sorely tempted to embark upon that course and hold that our State Constitution and the doctrine of fundamental fairness command submission of the question of materiality to the jury, my research discloses nothing in our organic law *517 according me such freedom. Indeed, the evidence abounds the other way. It has long been settled law in New Jersey that on a trial for perjury, "the question whether the element of materiality has been proven is solely for the court to determine and not for the jury." State v. Molnar, 161 N.J. Super. 424, 450 (App.Div. 1978), rev'd in part on other grounds, 81 N.J. 475 (1980); State v. Lupton, 102 N.J.L. 530, 534 (Sup.Ct. 1926); State v. Winters, 140 N.J. Super. 110, 113 (Law Div. 1976); Gordan v. State, 48 N.J.L. 611, 612 (E. & A. 1886);. Although the answer to the problem is simple enough for me, I recognize that others equally committed to protecting the civil rights of our citizens, have repeatedly adopted and adhered to a contrary view. More importantly, I find nothing in our State Constitution which lends support for the proposition that our organic law affords more expansive rights to a trial by jury than those granted by the United States Constitution.
The Court today refuses to abrogate the rule that the question of materiality in a perjury case is not to be submitted to the jury. That decision is consonant with the legislative command. See N.J.S.A. 2C:28-1b. While I am of the view that the statute is repugnant to the right to a jury trial, I am powerless to act upon that position in light of settled case law. I, therefore, concur in the judgment of the court.
NOTES
[1] The perjury statute did not mention materiality, but materiality was part of the common law definition of perjury. State v. Sullivan, 24 N.J. 18, 26 (1957).
[2] Judge Cohen's opinion in Winters includes a comprehensive analysis of the materiality element and its history.
[3] We are not concerned with the wisdom of the Legislature's allocation of materiality to the court. Although we have no doubt that jurors are capable of deciding the issue if it is presented properly, see Commonwealth v. McDuffee, supra; cf. Kenney v. Scientific, Inc., 213 N.J. Super. 372 (App.Div. 1986) (complexity of case does not justify striking of demand for jury trial), presentation of materiality as a jury question would entail difficulties including a trial within the perjury trial of the official proceeding in which the alleged perjury had been committed. See State v. Winters, supra.
[4] We do not have occasion, in this case, to address procedural aspects of the materiality determination such as whether the determination can be made in a pre-trial hearing or in a hearing outside the presence of the jury but after the jury is sworn. Cf. State v. Winters, supra, 140 N.J. Super. at 113-114.