708 A.2d 1196

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
BRAYNARD PURNELL, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 27, 1998—Decided March 20, 1998.

408

Before Judges DREIER, PAUL G. LEVY and WECKER.

*Ivelisse Torres*, Public Defender, attorney for appellant (*James K. Smith, Jr.*, Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Gerard C. Sims, Jr.*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

Braynard Purnell was convicted of capital murder in the death of Lawrence Talley. *N.J.S.A.* 2C:11–3a(1) and/or (2). His death sentence was reversed by the Supreme Court on direct appeal, but his convictions were otherwise affirmed. *State v. Purnell*, 126 *N.J.* 518, 601 A.2d 175 (1992). When the Camden County Prosecutor declined to retry the capital murder charge, defendant was sentenced to life in prison with a thirty year period of parole ineligibility for that crime. The jury also convicted Purnell of hindering apprehension, *N.J.S.A.* 2C:29–3b(2) [1]; possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4d; and perjury, *N.J.S.A.* 2C:28–1a. The unlawful purpose offense was merged with the murder conviction for sentencing. Defendant received a consecutive five year sentence with two years of parole ineligibility on the hindering charge and a flat five years on the perjury charge, concurrent to the hindering charge but consecutive to the life sentence.

---

[1] The judgment of conviction incorrectly references *N.J.S.A.* 2C:29–3b(1).

Defendant now appeals from the denial of his motion for post-conviction relief, *R.* 3:22–1, making the following arguments:

I. THE TRIAL COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING ON HIS CLAIM THAT HE WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS ATTORNEY'S FAILURE TO MOVE TO SUPPRESS HIS STATEMENT OF AUGUST 29, 1988, EVEN THOUGH IT WAS CLEAR THAT HE HAD BEEN ARRESTED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AMENDMENT, AND THEN QUESTIONED WITHOUT FIRST HAVING BEEN GIVEN, OR WAIVED, HIS FIFTH AMENDMENT RIGHTS.

II. THE TRIAL COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING ON DEFENDANT'S CLAIM THAT HE WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF HIS ATTORNEY'S FAILURE TO ARGUE THAT HIS STATEMENT OF SEPTEMBER 1, 1988 SHOULD BE SUPPRESSED ON THE GROUND THAT DEFENDANT HAD ASKED TO STOP THE QUESTIONING, AND THAT THE POLICE HAD REINITIATED THE INTERROGATION WITHOUT WAITING A SIGNIFICANT PERIOD OF TIME.

III. PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO APPEAR ON THREE SEPARATE OCCASIONS DURING JURY SELECTION, BUT INSTEAD SENT PARTNERS OR ASSOCIATES WHO WERE NOT FAMILIAR WITH THE FACTS OF THE CASE.

IV. PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL, HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL, BECAUSE HIS TRIAL ATTORNEY FAILED TO FULLY EXPLAIN THE NATURE OF THE EXISTENCE OF A CONFLICT OF INTEREST WHICH WAS DUE TO HIS LAW FIRM'S PREVIOUS REPRESENTATION OF A CRUCIAL STATE'S WITNESS IN A DRUG CASE AND BECAUSE COUNSEL FAILED TO SECURE A KNOWING WAIVER FROM HIM.

V. THE CONVICTION UNDER COUNT FIVE FOR PERJURY WAS OBTAINED IN VIOLATION OF DEFENDANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO HAVE THE JURY FIND EACH ELEMENT OF THE CRIME, IN THAT THE TRIAL COURT, NOT THE JURY, DETERMINED THAT THE ALLEGEDLY PERJURED STATEMENT WAS MATERIAL.

The motion judge ruled that all of the ineffective assistance arguments were or could have been raised on direct appeal, and were therefore procedurally barred. *R.* 3:22–4. The motion

judge also concluded that *State v. Anderson,* 127 *N.J.* 191, 603 *A.*2d 928 (1992), holding that the New Jersey Constitution mandates that the jury and not the judge find the requisite element of materiality to establish perjury, was a new rule of law and should not be applied retroactively to defendant's perjury conviction.

Based upon our careful review of the record, the briefs submitted, and the applicable law, we are satisfied that the arguments raised by defendant's Points I through IV are without merit and do not warrant extended discussion. *R.* 2:11–3(e)(2). We therefore affirm defendant's convictions for murder, hindering apprehension, and possession of a weapon for an unlawful purpose. However, because "defendant's petition advanced a claim of constitutional dimension" with respect to his conviction of perjury, that claim is not procedurally barred. *See State v. Cupe,* 289 *N.J.Super.* 1, 8, 672 *A.*2d 1233 (App. Div.), *certif. denied,* 144 *N.J.* 589, 677 *A.*2d 761 (1996); R. 3:22–4(c). And because we are convinced that *State v. Anderson* should be applied retroactively, we reverse solely as to that conviction.

Evidence at trial supported the jury's finding that defendant murdered Lawrence Talley on the evening of Friday, August 26, 1988. Defendant stabbed Talley, who was a known drug dealer, during the course of an attempted drug transaction. Defendant then hid the body in his own backyard, where it was found two days later after a search triggered by the victim's family. The jury apparently did not believe defendant's testimony that on the night in question, he saw two men fighting with the victim in his backyard; that he went outside and fought with them; and that he tried to chase them but they ran away.

At trial, defendant's attorney moved to dismiss the perjury count on the ground that the allegedly perjured statement was not material. The allegedly perjurious statement was defendant's testimony before the grand jury that after chasing the men from his backyard, he went back into his house through the front door, when in fact, according to his daughter's testimony before the grand jury, he waited until the police left, tapped on the kitchen

window, and got his daughter to let him climb back into the house through a bedroom window. The trial judge determined as a matter of law that the perjured testimony was material, and did not charge the jury with respect to materiality. With respect to the elements of perjury, the judge charged as follows:

> [i]f the State has proven each of the elements which I have given to you, that is, that it was—that the statement was made in an official proceeding, that the testimony given before that official proceeding was given under oath and that the statement given was knowingly false, if the State proves each and every one of those allegations beyond a reasonable doubt, you must find the defendant guilty.

Defendant did not object to the charge. On direct appeal, defendant did not argue that the jury and not the court should have determined the materiality of the allegedly false statement.

Two months after the Supreme Court decided defendant's direct appeal, the Court decided *State v. Anderson, supra,* holding that materiality is an element of perjury and therefore must be decided by the jury. Relying on that decision, defendant contended in his petition for post-conviction relief that *Anderson* should be applied retroactively, and that his perjury conviction should be vacated. The State opposed the retroactive application of *Anderson* on collateral attack.

We recently addressed the issue of retroactive application in the context of a collateral attack. *State v. Burgess,* 298 *N.J.Super.* 254, 689 *A.*2d 730 (App.Div.1997). There we held that the Supreme Court's decision in *State v. Alexander,* 136 *N.J.* 563, 643 *A.*2d 996 (1994), requiring specific jury instructions on a drug kingpin charge in order to comply with state constitutional guarantees must be applied retroactively in post-conviction relief proceedings. Retroactive application in *Burgess* was mandated irrespective of the defendant's failure to challenge the jury instructions on constitutional grounds on direct appeal. *Burgess* is now pending before the Supreme Court. However, the Court's decision in *State v. Afanador,* 151 *N.J.* 41, 697 *A.*2d 529 (1997) (*Afanador II*), applying *Alexander* retroactively in that case,

supports our decision in *Burgess.* *Afanador II* and *Burgess* inform our decision today.

N.J.S.A. 2C:28–1a provides:

A person is guilty of perjury, a crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

N.J.S.A. 2C:28–1b defines materiality:

Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding or the disposition of the matter. It is no defense that the declarant mistakenly believed the falsification to be immaterial. *Whether a falsification is material is a question of law.*

[Emphasis added.]

It is the emphasized final sentence of subsection b that *Anderson* held unconstitutional. Before *Anderson,* New Jersey and the great majority of jurisdictions treated the question of materiality in a prosecution for perjury as a question of law to be decided by the judge rather than the jury. *See State v. Lupton,* 102 *N.J.L.* 530, 133 *A.* 861 (Sup.Ct. 1926); *Gordon v. State,* 48 *N.J.L.* 611, 7 *A.* 476 (E. & A. 1886); *State v. Molnar,* 161 *N.J.Super.* 424, 391 *A.*2d 1225 (App.Div.1978), *rev'd in part on other grounds,* 81 *N.J.* 475, 410 *A.*2d 37 (1980); *State v. Winters,* 140 *N.J.Super.* 110, 355 *A.*2d 221 (Law Div.1976). *See also* John E. Theuman, J.D., Annotation, *Materiality of Testimony Forming Basis of Perjury Charge as a Question for Court or Jury in State Trial,* 37 *A.L.R.*4th 948 (1985). Until 1995 the United States Supreme Court likewise left the question of materiality in perjury cases to the judge. *See Sinclair v. United States,* 279 *U.S.* 263, 49 *S.Ct.* 268, 73 *L.Ed.* 692 (1929), *overruled by United States v. Gaudin,* 515 *U.S.* 506, 115 *S.Ct.* 2310, 132 *L.Ed.*2d 444 (1995).

In March 1992 the New Jersey Supreme Court, over Chief Justice Wilentz's dissent, held in *State v. Anderson* that the question of materiality in a prosecution for perjury must be decided by a jury. The *Anderson* court revisited the reasoning behind the old rule, and concluded "that the provision in *N.J.S.A.* 2C:28–1b declaring materiality to be a question of law irreconcil-

ably conflicts with the constitutional right of an accused to have a jury determine the existence beyond a reasonable doubt of each essential element of a crime before he or she is convicted." *Anderson, supra,* 127 *N.J.* at 194, 603 *A.*2d 928. The Court reasoned that because materiality is an element of the offense of perjury, its proof must be determined by a trier of fact. *Id.* The Court found no compelling reason to withdraw this determination from the jury, and held that the portion of *N.J.S.A.* 2C:28–1b declaring that materiality is a question of law violates the New Jersey Constitution. *Id.* at 194–95, 603 *A.*2d 928. Finally, applying this new rule to the facts before it, the Court concluded that "the failure to submit materiality to the jury cannot be considered harmless under the circumstances of this case." *Id.* at 195, 603 *A.*2d 928. The Court vacated Anderson's conviction for perjury and remanded the case to the Law Division. *Id.* Three years later, the United States Supreme Court (without citing *Anderson* ) overruled *Sinclair, supra,* and held in *United States v. Gaudin,* that the trial judge's failure to submit the question of materiality to the jury in a 18 *U.S.C.A.* § 1001 prosecution for making false statements violated the defendant's federal constitutional right to have the jury determine every element of the crime charged.

We have previously noted that New Jersey retroactivity jurisprudence has not adhered to a bright line rule that invariably treats cases on direct appeal differently from those raising the issue on collateral attack. In Judge Pressler's words,

> [t]he retroactivity of judicial holdings affecting the conduct of criminal trials is a complex issue implicating significant but competing jurisprudential doctrines which can, in the main, be summarized as the interest in fundamental fairness on the one hand and the interest in finality on the other. The weighing of the balance between them is, in actuality, primarily dependent on whether the retroactivity issue arises in the pre-finality stage of the criminal proceedings, that is, prior to the exhaustion of direct review, or whether it arises thereafter by way of collateral attack in a post-conviction proceeding. The subject, in our view, is rendered even more complex by the apparent divergence of retroactivity jurisprudence between the federal courts, in which direct versus collateral attack is the bright-line determinant of retroactivity, and the New Jersey courts, which have not expressly acknowledged the doctrinal implications of that distinction.
>
> [*Burgess, supra,* 298 *N.J.Super.* at 262, 689 *A.*2d 730.]

The majority in *Burgess* undertook both the federal and New Jersey retroactivity analysis, and we shall do the same. *See also State v. Cupe*, supra, 289 *N.J. Super.* at 9–11, 672 *A.*2d 1233 (where both federal and state constitutional principles are implicated, and the ruling sought to be applied retroactively "is essentially predicated on New Jersey law," "we should err on the side of caution by applying the more liberal New Jersey standards in determining retroactively.")

■ The first step in a retroactivity analysis is to decide whether the rule in question represents a new rule of law:

> Our cases have recognized that if a ruling does not involve a "departure from existing law," the retroactivity question never arises and our power to limit the retroactive effect of a decision is not implicated.
>
> [*State v. Knight*, 145 *N.J.* 233, 249–250, 678 *A.*2d 642 (1996) (quoting *State v. Burstein*, 85 N.J. 394, 403, 427 *A.*2d 525 (1981)).]

It can hardly be questioned that requiring the jury to determine materiality is a departure from existing law. That *Anderson* arises from the long established constitutional right to jury trial does not change the fact that the materiality of an allegedly perjured statement has long been considered a legal question for the court. Holding materiality to be an element for the jury must be deemed a new rule of law.

■ The next step in the context of a post-conviction relief motion is a three-factor analysis:

> If a decision indeed sets forth a "new rule," three factors generally are considered to determine whether the rule is to be applied retroactively: "(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice." Although those three factors have received detailed attention in our retroactivity case law, our cases also indicate that the retroactivity determination often turns more generally on "the court's view of what is just and consonant with public policy in the particular situation presented."
>
> [*Knight, supra*, 145 *N.J.* at 251–52, 678 *A.*2d 642 (quoting *State v. Nash*, 64 *N.J.* 464, 471, 469, 317 *A.*2d 689 (1974)(other citations omitted).]

*See also Afanador II, supra*, 151 *N.J.* at 58, 697 *A.*2d 529. "The first factor, the purpose of the new rule, is often the pivotal consideration." *Knight, supra*, 145 *N.J.* at 251, 678 *A.*2d 642

(quoting B*urstein, supra*, 85 *N.J.* at 406, 427 *A.*2d 525). In this case, the purpose of the new rule is clearly to ensure the defendant's constitutional right to a jury trial, which "includes the right to have the *same* trier of the fact decide *all* of the elements of the charged offense." *Anderson, supra*, 127 *N.J.* at 199, 603 *A.*2d 928 (quoting *State v. Ingenito*, 87 *N.J.* 204, 217, 432 *A.*2d 912 (1981)). The Supreme Court has characterized the jury's responsibility to decide the facts as "nondelegable and nonremovable." *Id.* (quoting *Ingenito, supra*, 87 *N.J.* at 211, 432 *A.*2d 912). The Court held that "an accused is constitutionally entitled to have a jury find each factual element beyond a reasonable doubt before he or she is convicted." *Id.* at 200, 603 *A.*2d 928. "[N]o matter how compelling the evidence, a trial court may not direct a verdict against a defendant in a criminal case." *State v. Collier*, 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982). The first factor therefore weighs heavily in favor of applying *Anderson* retroactivity. Indeed, in our view, this factor alone is sufficient to warrant retroactive application, as it involves a fundamental constitutional right.

The second factor, the degree of reliance placed upon the old rule by those who administered it, does not favor retroactive application, in that judges and lawyers justifiably relied on the existing rule. While the motion judge stressed this factor in denying retroactivity, we find it of limited significance in this particular case. That is so in large part because of the relationship between the second and third factors.

The third factor, the effect on the administration of justice, weighs on the side of retroactive application. We are satisfied that our courts will not be burdened with a substantial number of perjury retrials as a result of this decision. While statistics on perjury convictions are not available, clearly the number is small. In addition, as a third degree offense, the ordinary sentence for perjury (assuming either no presumption against incarceration or a presumption that has been overcome) is three to five years. N.J.S.A. 2C:28–1a; N.J.S.A. 2C:43–6a(3). *Anderson* was decided in 1992, and most persons whose convictions became final before

that date will have completed their sentences by now. While there may be some, like Purnell, who received consecutive sentences and still have a practical interest in seeking retrial, those numbers will be very small. We recognize that irrespective of incarceration, persons previously convicted of perjury have a stake in overturning their convictions. Once again, we doubt that the number is sufficient to seriously impact the courts. In this respect, the facts supporting full retroactivity are more akin to *Burgess* than to *Cupe*.

In arguing against retroactive application of *Anderson,* the State cites several federal cases holding that *Gaudin* should not be given retroactive effect. The Supreme Court of the United States has not yet addressed the issue of retroactive application of *Gaudin* on collateral attack, but has retroactively applied *Gaudin* in the context of a direct appeal. *Johnson v. United States,* 520 *U.S.* 461, 117 *S.Ct.* 1544, 137 *L.Ed.*2d 718 (1997) (holding that under *Griffith v. Kentucky,* 479 *U.S.* 314, 107 *S.Ct.* 708, 93 *L.Ed.*2d 649 (1987), *Gaudin* must be applied retroactively on direct review).

The State cites three reported federal cases declining to apply *Gaudin* retroactively on collateral attack. *United States v. Shunk,* 113 *F.*3d 31 (5th Cir.1997); *United States v. Swindall,* 107 *F.*3d 831 (11th Cir.1997); *United States v. Holland,* 919 *F.Supp.* 431 (N.D.Ga.), *aff'd,* 85 *F.*3d 643 (11th Cir.1996).[2] We find each of those cases unpersuasive. *Shunk* held that *Gaudin* should not be applied retroactively because it represented a new rule of criminal procedure and not a rule of substantive criminal law, and "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced". *Shunk,* 113 *F.*3d at 34–35. (quoting *Teague v. Lane,* 489 *U.S.* 288, 109 *S.Ct.* 1060, 103 *L.Ed.*2d 334 (1989) (emphasis added)). *Swindall* also held that under *Teague, Gaudin* was a

---

[2] The State also cites two unreported cases, but does not attach them to its appendix as required by *R.* 1:36–3. We therefore do not address those cases.

procedural rule that did not seek to correct the inaccuracies of the judges' decisions regarding materiality, but rather sought to place the burden of the decision with the proper entity—the jury. 107 *F*.3d at 836. *Holland*, which was cited in *Swindall*, stands for the same proposition. 919 *F.Supp.* at 435.

Federal retroactivity law would not apply a new rule retroactively on collateral attack, unless it fits into one of two exceptions.

First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Mackey [v. United States]*, 401 *U.S.* [667, 692, 91 *S.Ct.* 1171, 1180, 28 *L.Ed.*2d 388, 420 (1971)]. Second, a new rule should be applied retroactively if it requires the observance of those procedures that . . . are "implicit in the concept of ordered liberty." *Id.* at 693, 91 *S.Ct.* at 1180 (quoting *Palko v. Connecticut*, 302 *U.S.* 319, 325, 58 *S.Ct.* 149, 152, 82 *L.Ed.* 288 (1937) (Cardozo, J.)).

[*Teague, supra,* 489 *U.S.* at 307, 109 *S.Ct.* at 1073, 103 *L.Ed.*2d at 353.]

Certainly nothing is more implicit in the concept of ordered liberty than the right to a jury trial on a criminal charge. None of the reported cases relied on by the State to reject retroactive application of *Gaudin* gives sufficient weight to its due process implications. *See Burgess, supra,* 298 *N.J. Super.* at 270–71, 689 *A.2d* 730.

The New Jersey Supreme Court has expressly viewed its ruling in *Anderson* as implicating both federal and state constitutional guarantees of due process. *U.S. Const.,* amend. XIV, § 1; *N.J. Const.,* art. I, ¶ 1.

Intertwined with the right to a jury trial is the federal constitutional right to due process of law. The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970). Similarly, this Court has held that due process requires that an accused receive a trial "in which the jury must find that the State has proved each and every material element of the crime beyond a reasonable doubt." *State v. Ragland*, 105 *N.J.* 189, 193–94, 519 *A.2d* 1361 (1986).

[*Anderson, supra,* 127 *N.J.* at 200–201, 603 *A.2d* 928 (other citations omitted).]

Essential to due process is the right not to be deprived of liberty unless the jury has found all elements of the offense charged beyond a reasonable doubt. In *Burgess*, Judge Pressler consid-

ered the *Teague* factors as applied to faulty jury instructions on collateral attack.

> If *Teague* were to govern, we are persuaded that the "ordered liberty" exception would apply. It is a foremost principle of our criminal jurisprudence that a person accused of a crime cannot be validly convicted unless the State proves each element of the offense and the jury is instructed to find each element of the offense as correctly defined. Considering the magnitude of the mandatory penalty a conviction under the kingpin statute carries, we are persuaded that fundamental fairness and justice require full retroactivity.
>
> [*Burgess, supra,* 298 *N.J.Super.* at 270–71, 689 *A.*2d 730.]

After balancing the three factors in New Jersey retroactivity analysis under *Knight,* and *Afanador II,* as well as the two exceptions set forth in the federal analysis under *Teague,* we conclude that under either analysis the considerations here weigh overwhelmingly in favor of retroactivity.

■ Because the failure to charge the jury on the materiality element was not challenged at the trial level, we must analyze defendant's argument under the plain error rule. A reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result. *R.* 2:10–2. In the context of a jury charge, plain error is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring an unjust result." *State v. Jordan,* 147 *N.J.* 409, 422, 688 *A.*2d 97 (1997). (quoting *State v. Hock,* 54 *N.J.* 526, 538, 257 *A.*2d 699 (1969), *cert. denied,* 399 *U.S.* 930, 90 *S.Ct.* 2254, 26 *L.Ed.*2d 797 (1970)).

■ It is well settled that " 'correct jury instructions are at the heart of the proper execution of the jury function' and are essential for a fair trial." *Burgess, supra,* 298 *N.J.Super.* at 261, 689 *A.*2d 730 (quoting *State v. Alexander,* 136 *N.J.* 563, 571, 643 *A.*2d 996 (1994)). "It is virtually axiomatic that erroneous jury instructions are poor candidates for rehabilitation by the mechanism of the plain-error rule." *Id.* at 271, 689 *A.*2d 730. "It is also clear that a charge which fails properly to define the substantive

elements of the offense is ordinarily fatal to the ensuing conviction." *Id.* at 261, 689 *A.*2d 730 (citing *State v. Rhett*, 127 N.J. 3, 7, 601 *A.*2d 689 (1992)).

The evidence with respect to the materiality element of the perjury charge was open to question. The facts relevant to the perjury charge are as follows. On the night of the murder, defendant's daughter initially called police after she, her brothers, and a neighbor witnessed fighting and yelling in the woods behind defendant's house. Both the defendant's daughter and the neighbor saw defendant in the woods. The police arrived, but left after a brief search of the backyard. Defendant eventually reappeared alone. He then went out, spending time that evening with several persons who were also acquainted with the victim.

Friends and family of the victim soon began to search for him. The police were called in, and two days later they found Talley's body in the woods in defendant's backyard. During the police investigation, defendant gave different versions of the events of August 26 before and after his arrest. Before his arrest, he claimed to have seen two men fighting in his backyard, and further claimed that they ran off when he shouted out that he would call police. After his arrest, he said that he had been involved in a fight with one of the two unidentified men. His daughter also gave conflicting statements about what she observed, and whether she saw her father fighting with anyone.

Defendant testified voluntarily before the grand jury, denying his involvement in Talley's murder. He recanted an earlier statement that Talley had come to his house on the evening of August 26, saying he had been mistaken. He related an incident with the two men in his backyard. He emphasized that initially he had not told the police that he had been involved in a fight because · "there's a body involved in this," and he was afraid that he might be incriminated. He also testified that after trying to chase the men in his backyard, he returned home through his front door. The fifth count of the Indictment charged that defendant

did during an official proceeding make a material false statement under oath: to wit; on December 14, 1988, [defendant] testified before the Camden County Grand Jury that on the night of August 26, 1988 he had returned to his house after chasing someone behind his house and entered through the front door: whereas, in fact he had waited, after killing Lawrence Talley, for the police who had been summoned to the area by Dia Shaw, to leave the scene; he then proceeded to tap on the kitchen window and instruct [his daughter] to permit him to climb back into the house through a bedroom window, contrary to the provisions of *N.J.S.* 2C:28–1a. . . .

We are guided here, as we were in *Burgess,* by *State v. Coyle,* 119 *N.J.* 194, 574 *A.*2d 951 (1990),

in which the Supreme Court again made clear that where the elements of the crime are not correctly charged, the defendant is entitled to a new trial if there is a sufficient basis for the jury to find in defendant's favor on that issue. As Justice Clifford explained, it is enough if that favorable finding is a permissible one . . . [even if] not the exclusive one. Although a jury might not agree with defendant's argument, defendant was entitled to have the jury decide the issue."

[*Burgess, supra,* 298 *N.J.Super.* at 272, 689 *A.*2d 730 (footnote omitted).]

We conclude that the jury that found defendant's statement false nevertheless could have had reasonable doubt as to its materiality. As in *Burgess* and *Coyle,* "defendant was entitled to have the jury decide the issue." *Id.* We therefore vacate defendant's conviction for perjury and remand for a new trial consistent with *Anderson.*

Defendant's remaining claims require only brief comment. Defendant raises four claims of ineffective assistance of counsel in his petition for post-conviction relief, citing his trial counsel's failure to (1) move to suppress defendant's taped statement of August 29, 1988; (2) put defendant on the stand during the suppression hearing of defendant's September 1, 1988 taped statement; (3) appear at jury selection on three separate occasions while sending in an associate or partner as substitutes; and (4) fully explain to defendant the nature of the conflict of interest due to his law firm's previous representation of a state's witness.

■ Defendant gave his August 29, 1988 taped statement in a non-custodial situation as a part of routine police investigation. Defendant, his fiancée, and their children were taken to headquarters to give formal statements after defendant gave a preliminary and clearly voluntary oral statement to the investigating detec-

tives at his home. The statement that he gave at headquarters was essentially the same as his oral statement, which in any case would have been admissible. The fact that he and his fiancée were separated at headquarters, presumably so that they could not confer before giving their statements, did not mean that defendant was in custody. He was at headquarters only for a short period and then was permitted to leave. *Miranda* [3] warnings were not necessary, and a motion to suppress would have been denied. Defense trial counsel's decision not to move to suppress was reasonable under the circumstances.

Defendant's September 1, 1988 taped statement was likewise properly admitted. Two police officers testified that after defendant was arrested on that day, he was *Mirandized* and questioned only after waiving his right to have an attorney present. Defendant then stopped the questioning because he was tired. He later initiated further questioning in exchange for a pack of cigarettes, as he himself testified before the grand jury. Under these circumstances, when defendant himself initiated police questioning, new *Miranda* warnings were not necessary. Therefore, his argument that his own testimony at a suppression hearing would have led to a different result is unpersuasive. His ineffective assistance claims could not have met the second prong of the *Strickland/Fritz* [4] standard.

Defendant's last two claims were raised on direct appeal and decided by the New Jersey Supreme Court. *See State v. Purnell*, 126 *N.J.* 518, 535–36, 601 *A.2d* 175 (1992). Having been adjudicated on the merits, they are procedurally barred. *R.* 3:22–5; *State v. Preciose*, 129 *N.J.* 451, 476, 609 *A.2d* 1280 (1992).

---

[3] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

[4] *Strickland v. Washington*, 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2063–64, 80 *L.Ed.*2d 674, 693 (1984); *State v. Fritz*, 105 *N.J.* 42, 58, 519 *A.2d* 336 (1987).

We reverse defendant's perjury conviction and remand for a new trial on that charge.[5] We affirm defendant's remaining convictions.

---

[5] In its opposition to defendant's motion, the State suggested that the court consider reducing the third degree perjury conviction to a conviction of fourth degree false swearing. The State abandoned that argument on this appeal, and we therefore do not address it.