The appellant was convicted of false swearing. Indictment and conviction were based on the following passage, which is taken from his testimony given before the grand jury of Camden County. The Attorney General, showing appellant a photograph that has been proved to be a photograph of Benjamin Anyzcek, asked:
"How about this one? Do you know him? No, sir.
"This one? (Indicating the same or another photograph of the same man.) Yes. He was about three years in the Navy.
"Who is he? Eddie Anyzcek.
"His name isn't Eddie, is it? I don't know. It's Anyzcek.
"His right name is Ben, isn't it? Ben, I mean.
"What is his business? He just got out of the Navy.
"Can we just forget about the Army and Navy? You want to inject that into every question. What has he been doing since he got out? I don't know.
"Don't you know he tended bar at Klosterman's? Yes, sir, I know he tended bar there."
The first count of the indictment charges that appellant falsely swore that he did not know Benjamin Anyzcek and could not identify a photograph of him, and that he also swore falsely to the contrary. The second count charges that appellant falsely swore that he did not know what business Anyzcek was engaged in, and that he also falsely swore that he did know. The draftsman of the indictment seems to have intended to frame it under R.S.
2:157-5 which permits an allegation that one or the other of two contradictory statements is false, without alleging which statement is false. But the indictment, as we have pointed out, charges that each of the opposite statements was false. This defect in the indictment did not prejudice the defendant on the merits of the case and is not ground for reversal.
Upon the trial, the evidence was clear that at the time appellant testified before the grand jury, he was acquainted with Anyzcek and recognized his photograph and that he was *Page 50 
aware that Anyzcek tended bar at Klosterman's. Indeed, the State as well as the appellant readily admitted these facts. It did not appear whether two different photographs of Anyzcek were shown appellant when he was before the grand jury; or whether the same photograph was shown him twice; whether he actually recognized or failed to recognize the photograph that was first shown him. There was, however, sufficient evidence from which the jury might find that appellant's answer "I don't know" to the question what Anyzcek had been doing since he got out of the Navy, was not a slip of the tongue but was an intentional falsehood. And yet we are satisfied that the conviction must be set aside.
While there are few decisions in point, it is probably the rule that one is not guilty of perjury who corrects his testimony before the hearing closes. Brannen v. State, 114 So. 429
(Fla. 1927); Henry v. Hamilton, 7 Blackf. 506 (Ind. 1845); Peo. v. Gillette, 111 N.Y.S. 133 (App. Div. 1908);Peo. v. Glass, 181 N.Y.S. 547, 549 (App. Div. 1920); Statev. Ledford, 81 Pac.2d 830 (Wash. 1938); Burdick, Law ofCrimes (Ed. 1946), § 329. In our own State, upon a trial for perjury, the jury must consider "the whole evidence given by the prisoner at the time of the alleged perjury, in connection with all its qualifications, explanations and modifications." Dodgev. State, 24 N.J.L. 455 (Sup. Ct. 1854). But see U.S. v.Norris, 300 U.S. 564, 57 S.Ct. 535 (1937).
The operation of the rule — if it be the rule — which gives to one who has sworn falsely, a locus poenitentioe, is much restricted by our statute, R.S. 2:157-5, which permits the indictment to allege contradictory statements. By its very terms, the statute authorizes the conviction of a person who, "on his oath or oaths," willfully makes a statement that is false and later makes a true and contradictory statement relating to the same matter.
In giving effect to the statute, we must keep in mind the nature of the offense and the object of the enactment. Perjury is an obstruction of justice; if perjury is successful, justice miscarries. False swearing in nonjudicial matters is *Page 51 
an aggravated species of fraud, since many acts of government as well as private individuals are done in reliance on the truth of a statement made under oath. Sound policy encourages the correction of honest mistake, and even the voluntary righting of intentional falsehood. Few crimes are more difficult to prove, and therefore few go more generally unpunished than perjury. However, it sometimes happens that the false witness testifying a second time may find it to his advantage to tell the truth; but still the State must carry the burden of proving which statement is false. It was to simplify the problem of proof and not to change the nature of the offense that the Legislature enactedR.S. 2:157-5. The wrong which is still the essence of the crime is false swearing that does or may lead to some action taken in reliance on the truth thereof.
We assume that the facts in U.S. v. Norris, supra, would constitute a violation of our statute. The day after the accused had concluded his testimony before a congressional committee, he heard another witness testify to the contrary of what he had said. He then received permission to resume the stand and told the truth. That situation is essentially different from that before us where Kowalczyk having testified "I don't know," at once retracted his misstatement and testified "I know he tended bar there." We do not attempt to draw a line and say that under circumstances of such and such a character, a correction is a good defense, and under any different circumstances, it is not a defense. But we are satisfied that the Legislature did not mean to punish a false statement, even under oath, which is immediately corrected as in the case at bar.
It is most unlikely that the jury would have found appellant guilty unless certain matters not relevant to the charge against him had been brought prominently to the attention of the jury. The appellant was a member of the police department, a detective assigned to the district in which a certain gambling house was located. His testimony before the grand jury, which was read in full at his trial — at his own counsel's demand — makes evident that he was called before *Page 52 
that body not to present evidence to support an indictment of those guilty of maintaining the gambling house but to obtain from appellant admissions that he had been guilty of nonfeasance in connection with the gambling house, or worse, that he had corruptly protected it. His examination was replete with questions such as these: "You didn't take your job seriously, did you?" "What kind of law were you supposed to enforce in your district?" "Do you know a man by the name of Bosco who runs a barber shop in town?" "He was charged with a murder rap here once, wasn't he?" "You knew that Klosterman went to State's Prison for engaging in the numbers racket?" "Did you ever make any investigation of it (Klosterman's saloon)?" "Do you know anything about the numbers racket?" "You know what murder is?" "You never murdered anybody?" "Did you ever receive any money from Klosterman?" "During the years 1945, 1946 and 1947, have you received any income from any source except your pay as a police officer of the City of Camden?"
Appellant's long cross-examination on the trial for false swearing carried on the attack: "As a detective, did you ever arrest any gun man?" "Did you ever arrest any gamblers?" "You cannot give the members of the jury any idea whether you ever arrested any gamblers or not?" "Did you ever arrest any person for the numbers racket during your 28 years?" "What are your duties as a police officer?" "Do you know what a criminal is?" "How far is this Club Cadix (Klosterman's saloon) from where you reside?"
The judgment of conviction will be reversed. *Page 53