826 A.2d 723 (2003)
361 N.J. Super. 522
STATE of New Jersey, Plaintiff-Respondent,
v.
Renard NEAL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2003.
Decided June 16, 2003.
*725 Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Mr. Kirsch, of counsel and on the brief).
Edward G. Washburne, Monmouth County Assistant Prosecutor, argued the cause for respondent (John Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, Assistant Prosecutor, of counsel and on the brief).
Before Judges CONLEY, CARCHMAN and PARRILLO.
The opinion of the court was delivered by CONLEY, P.J.A.D.
Following a jury trial, defendant was convicted of third-degree perjury, N.J.S.A. 2C:28-1. A two-year probationary term with a requirement of 100 hours of community service was imposed along with fines and penalties.
On appeal, defendant contends:
POINT I THE STATE'S CASE WAS INSUFFICIENT TO PROVE MATERIALITY; ALTERNATIVELY, THE MEAGER EVIDENCE OF MATERIALITY, IF ANY, WAS BLATANTLY INADMISSIBLE HEARSAY AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HIM AND TO DUE PROCESS.
POINT II THE PROSECUTOR'S SUMMATION VIOLATED DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN HE CASTIGATED DEFENDANT AS "SHAMELESS" FOR CALLING CHARACTER WITNESSES AND TOLD THE JURORS TO HOLD DEFENDANT ACCOUNTABLE FOR THE "BETRAYAL OF THE CHILDREN" OF ASBURY PARK (Not Raised Below).
We disagree as to point I but agree the prosecutor's summation exceeded the bounds of acceptable advocacy and reverse on that basis. In doing so, we also comment upon the judge's charge to the jury on the materiality element of perjury and disapprove certain of its language which does not, coincidentally, appear in the *726 Model Jury Charge. On retrial, the language should not be repeated.

I.

Facts
In June 1997, two months after defendant was elected to the Asbury Park Board of Education, he and three other board members attended a weekend New Member Orientation Conference in Princeton. The Board's credit card was used for various expenses totaling $1560 and which included $118.99 for clothing defendant purchased for himself at a Foot Locker and Riggins. Additionally, each member was given $250 by the Board's business administrator as an advance for expenses and which defendant never accounted for. A Monmouth County Grand Jury was convened at some point to investigate the Asbury Park Board of Education and in April 1998 defendant was subpoenaed to provide testimony for which he was given immunity from criminal prosecution, except for perjury and false swearing.
Defendant's grand jury testimony became the basis for the perjury conviction on appeal before us. Originally indicted on nine separate alleged perjurious statements, the State's trial evidence was limited to four alleged perjurious statements. The jury found defendant guilty of perjury as to two. Those statements related to (1) whether after the weekend junket defendant had been requested by the Board's business administrator to account for his expenditures including the $250 advance and the credit card purchases and (2) whether he was aware of a board policy concerning reimbursement for expenditures by members of the Board.
Defendant's grand jury testimony as to whether he had been requested to account for what he spent with the Board's monies, which the petit jury found perjurious, was:
Q And have you made any effort to account for those monies since then?
A I was never asked to.
Q Dora neverDora Mylchreest [the business administrator] never requested a proof of, or receipts for, that money?
A No. Not to me.
Q Not to you?
A No.
His grand jury testimony as to knowledge of a board policy on reimbursement for expenditures, which the petit jury found perjurious, was:
Q Let me show you Grand Jury Exhibit One [Policy 147] and ask you to look at that and tell me if you've ever seen that document before.
A Well, I've never seen the document before. No. I've never seen this document before.
Q But you've only looked at the first page, sir. Would you look at the rest of it.
A I've never seen it before.
....
Q Were you aware of a Board policy that you would be reimbursed for car travel expenses at the rate of twenty-five cents a mile?
A Actually, I just looked at that yesterday.
Q First time you had a chance to look at that?
A First time I ever personally had.
Q And other than just recently you were unaware of that?
A I've never seen that before in my life.[1]

*727 II.

Perjury/Materiality
We need not recount the evidence presented to the petit jury concerning the falsity of these statements. Suffice it to say, there was ample basis for the jury's conclusion that they were false. The focus in point I of defendant's brief is upon materiality and whether there was sufficient evidence to support the jury's evident conclusion that the falsehoods were material. It is, of course, the materiality of the falsehoods which distinguishes third-degree perjury from fourth-degree false swearing. Compare N.J.S.A. 2C:28-1a with N.J.S.A. 2C:28-2. See State v. Mullen, 67 N.J. 134, 137, 336 A.2d 481 (1975). Both the prosecutor and defendant treat the issue as novel and refer to federal cases. The concept of materiality as an element of criminal perjury, however, is of long-standing existence in this jurisdiction. While discernment of its scope and evidential requirements requires some parsing of the statutory language and case law, there is neither novelty nor the necessity to resort to other jurisdictions' law.
We begin with the statute. Pursuant to N.J.S.A. 2C:28-1a, a person is guilty of perjury "if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." Ibid. Subsection (b) defines the element of materiality thusly:
Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding or the disposition of the matter. It is no defense that the declarant mistakenly believed the falsification to be immaterial....
[N.J.S.A. 2C:28-1b (emphasis added).]
Once an issue for the trial judge, materiality of the falsehoods now is for the jury to determine. State v. Anderson, 127 N.J. 191, 194-95, 603 A.2d 928 (1992). Here, the jury was instructed in part that:
The next element that the State has to prove [is] that the statement is material. Now, falsification is material in the official proceeding if it could have affected the course or outcome of that proceeding or the disposition of the matter. It is irrelevant if the declarant or if the defendant mistakenly believed that the falsification was not material.
Now, in this case, the Assistant Prosecutor presenting the case to the Grand Jury told [defendant] he was summoned before the Grand Jury to give testimony concerning the activities of the Board of Education and some of their members.
The Assistant Prosecutor ... had also told [defendant] that an area of inquiry concerned the use of credit cards and expenses. Grand Juries may also investigate criminal activities.
Now, as I've stated, a falsification is material in an official proceeding if it could have affected the course or outcome of that proceeding or disposition of that matter.
It is irrelevant if the defendant mistakenly believed that the falsification was not material. You must consider whether if [defendant] made knowingly false statements under oath in an official proceeding could those statements have affected the course, outcome or disposition of the Grand Jury's investigation *728 into the Asbury Park Board of Education and some of their members and the alleged use of credit cards and expenses or misuse of credit cards and expenses.
[Emphasis added.]
The jury, then, was instructed that materiality required it to determine whether the falsehoods, if any were found, were such as to have possibly affected "the course, outcome or disposition of the Grand Jury's investigation." The scope of that investigation was described by the judge, consistent with the evidence, as focusing upon the Asbury Park Board of Education, some of its members, and their improper use of credit cards and expenses. If we understand defendant's contention here, it is that the element of materiality requires consideration of not only evidence of the scope of the grand jury's investigation such that the relationship of the pertinent questions and defendant's false answers to what the grand jury was investigating can be evaluated by the petit jury, but also evidence that would allow the jury to determine whether the false answers had an impact upon that investigation.
We discern this from the following discussion in defendant's brief of certain federal cases:
In United States v. Conley, 186 F.3d 7, 15-16 (1st Cir.1999), cert. den. 529 U.S. 1017, 120 S.Ct. 1417, 146 L.Ed.2d 310 (2000), a grand juror was called to testify "as to the scope and purpose of the grand jury's investigation" and, most importantly, as to the role which the defendant's testimony played (or did not play) in that investigation. The Conley court, citing United States v. Abrams [Abroms], 947 F.2d 1241, 1248 (5th Cir.1991), and United States v. McComb, 744 F.2d 555, 564 (7th Cir. 1984), noted the "disfavor" with which the federal courts view perjury prosecutions which attempt to us "only the defendant's grand jury's testimony" to prove the materiality of that same testimony. Conley, 186 F.3d at 17 n. 6, quoting McComb, 744 F.2d at 564.
Similarly, in United States v. DeZarn, 157 F.2d [F.3d] 1042, 1051-1052 (6th Cir.1998), the proof of materiality of a defendant's false sworn statement to an investigator included the testimony of that same investigator as to the precise scope of the investigation and the effect which the defendant's lies had on that investigation. Here, of course, nothing of the sort was offeredjust a bland unsworn statement that the grand jury was investigating "activities" involving "credit cards and expenses."
Likewise in United States v. Regan, 103 F.3d 1072, 1984 [1084] (2d Cir.), cert. den. 251 [521] U.S. 1016 [1106], 118 [117] S.Ct. 2482 [2484], 138 L.Ed.2d 992 (1997), an assistant United States attorney and a police officer testified about the nature of the grand jury investigation (at which the defendant allegedly lied under oath) and regarding the "significant questions" about that investigation which still remained as a result of the defendant's lies. Again, in the instant case there was no such proof offered. Indeed, the prosecutor did not even argue materiality to the jury in his summationa sign that his case was focused on that element of perjury.
[Emphasis added.]
By virtue of the emphasized language, we take it that defendant contends that jury inquiry into "the role which the defendant's testimony played (or did not play) in [the grand jury] investigation," or "the effect which the defendant's lies had on that investigation," or "the `significant questions' about that investigation which still remained as a result of defendant's *729 lies," is required. Indeed, the statute itself defines materiality in the context of falsities that "could have affected the course or outcome of the proceeding or the disposition of the matter." N.J.S.A. 2C:28-1b. The "could have affected" language might tend to support defendant's argument and is probably what led the court in State v. Whalen, 235 N.J.Super. 506, 512-13 n. 6, 563 A.2d 457 (App.Div. 1989), overruled by State v. Anderson, supra, 127 N.J. at 197, 603 A.2d 928, to prognosticate (at a time that the issue was one for the judge) that were materiality for the jury to decide it would entail substantial trial strategy difficulties, including the possibility that the perjury trial might have to be conducted as a "trial within a trial." Ibid.
Perhaps the following discourse on the subject by former Chief Justice Wilentz in his dissent in State v. Anderson illustrates the querisome aspects of criminal materiality:
The statute says that perjury is material "if it could have affected the course or outcome of the proceeding...." If that means that it is material only if it was reasonably likely, or reasonably possible, or somewhat probable, or something similar, to have affected the outcome, then clearly the judge has to engage in a factual inquiry about the probable or possible impact of the perjurious testimony on the outcome of the proceedings. No more prototypical inquiry for jury consideration could be defined. It is not only quintessentially factual, it is a question on which jurors are experts. On the other hand, if what the statute means, despite a somewhat different thrust in its language, is that the judge is to determine whether the perjurious testimony bears on the issue, has some relationship to the issue, and in that sense could have affected the outcome, the judge's inquiry is absolutely not one wit different from the inquiry made in deciding whether or not evidence is material-relevant.
....
The outcome of a debate on policy as well as on logic may also depend on the meaning given to the statutory provision. If it means "materiality" only in the sense of whether the perjurious statement "tends" to prove something, there is no point in having a jury decide it. Indeed, if that is what it means, it is hard to argue that it is an "element" of the crime. On the other hand, if materiality requires an exhaustive examination of the case in which the perjury was committed to determine whether or not it was likely that it could have affected the outcome, then the policy argument proceeds to the question of whether the jury or the judge is better suited to make that determination. The "trial within a trial" will exist regardless of where the power is seated, but the potential delay, confusion, and expense would seem to be diminished if it is the judge rather than the jury who handles that part of the case.
[State v. Anderson, supra, 127 N.J. at 223, 225, 603 A.2d 928.]
In a footnote in his dissent the former Chief Justice thought "the correct construction of the `materiality definition' (`could have affected the course or outcome of the proceedings') is far from clear." Id. at 228, n. 6, 603 A.2d 928. We are convinced that is not so. We say this in light of the 1971 Commentary which expressly states that the "could have affected" language is intended to be "equivalent to the `capable of influencing' rule found in many judicial opinions." Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:28-1 (quoting the 1971 Final *730 Report of the New Jersey Criminal Law Revision Commission).
When we look to the "many judicial opinions" which have espoused the "`capable of influencing' rule," albeit decided when materiality was still an issue for the trial judge to decide, it becomes clear that while materiality for a perjury conviction is "something other than materiality in the evidentiary sense," State v. Anderson, supra, 127 N.J. at 202, 603 A.2d 928, it does not require "an exhaustive examination of the case in which the perjury was committed to determine whether or not it was likely that it could have affected the outcome," id. at 224, 603 A.2d 928 (Wilentz, C.J., dissenting), or "a trial within a trial," State v. Whalen, supra, 235 N.J.Super. at 512-13 n. 6, 563 A.2d 457. See State v. Voorhis, 52 N.J.L. 351, 355, 20 A. 26 (S.Ct. 1890) (trial testimony alleged to have been false "will be deemed material whenever it tends directly or circumstantially to prove the matters in issue."). Long ago, the basic evidentiary demands of materiality in the context of criminal perjury were depicted thusly:
The meaning of `materiality' as an element of perjury has not recently been explored in New Jersey. Certainly, it is something other than materiality in the evidentiary sense. United States v. Whitlock, 456 F.2d 1230 (10 Cir.1972). See American Process Co. v. Pensauken Brick Co., 78 N.J.L. 658, 75 A. 976 (E. & A.1910). See also Evid. R. 1(2), 30, 53 and 55.
Some hints may be found in the old cases. In State v. Voorhis, 52 N.J.L. 351, 20 A. 26 (Sup.Ct.1889), defendant had testified in a civil action that plaintiff bank did not charge the borrower annual interest at a rate greater than 6%. The indictment charged that the testimony was material and willfully false. The issues in the civil case are not revealed in the opinion, but it is apparent that usury was one of them. That being so, defendant's false testimony went to the heart of an affirmative defense. The testimony was held to be material under the test that `the testimony will be deemed material whenever it tends directly or circumstantially to prove the matters in issue.' 52 N.J.L. at 356, 20 A. 26.
In Braeutigam v. State, 63 N.J.L. 38, 42 A. 748 (Sup.Ct.1899) a false affidavit was held not to support a perjury indictment where it was submitted in the trial of a civil cause and was not admissible on the merits but only in connection with a pleading matter.
State v. Sweeten, 83 N.J.L. 369, 85 A. 311 (Sup.Ct.1912), involved allegedly false testimony before a grand jury bearing directly on the question of whether official misconduct had taken place. It was patently material to the grand jury's inquiry. Since a grand jury proceeding is by nature open-ended and not defined and limited by pleadings, as a civil trial is, the standard of materiality in such proceedings may be different. See, e.g., United States v. Carson, 464 F.2d 424 (2 Cir.1972), cert. den. 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972).
In State v. Snyder, 93 N.J.L. 18, 107 A. 167 (Sup.Ct.1919), aff'd 94 N.J.L. 277, 109 A. 925 (E. & A.1920), false testimony was held material in a suit for alienation of affections. Defendant in that suit testified that he had discovered his wife in an act of adultery. The materiality, according to the court, lay in the testimony's bearing on the issue of damages, i.e., the extent to which the retention of the husband's affections was of pecuniary value to plaintiff wife.
A criminal defendant who testified falsely that he had not voluntarily and *731 intentionally signed a confession, and who was thereupon acquitted, was held to have testified falsely to a material fact in State v. Rose, 3 N.J.Misc. 1002, 130 A. 461 (Sup.Ct.1925). Similarly, a State's witness who falsely swore he could not identify the actors in a criminal event he had seen was held to have testified falsely to a material fact in State v. Scott, 12 N.J. Misc. 278, 171 A. 311 (Sup.Ct.1934)....

Certainly, testimony is material which tends to prove one of the central issues of the case. Thus, false testimony as to the identity of criminal actors, or the extent of civil damages, or the existence of unlawful interest charges that could excuse repayment of a loan, must be material. Moreover, testimony establishing or denying matters which themselves bear crucially on central issues, such as the lawful execution of a confession, is material. But it is unclear how far into collateral issues, which might have a bearing on the ultimate outcome of the trial, testimony may go and still be material. The federal cases, collected in an annotation in 22 A.L.R. Fed. 379 (1975), announce varying approaches in many differing contexts.
At early common law a necessary element of perjury was the intent to mislead the court or jury. After statutory codification the element of intent to mislead was replaced by the requirement of materiality. State v. Sullivan, 25 N.J.Super. 484, 96 A.2d 680 (App. Div.1953). The common focus of both the common law and the statutory requirements seems to be on the potential effect of the false testimony on the outcome of the judicial proceeding. Perjury, therefore, may be thought of as a form of obstruction of justice, an effort to pervert the judicial process which, if successful, affects the outcome of the proceeding. See State v. Kowalczyk, 4 N.J.Super. 47, 66 A.2d 175 (App.Div. 1949), rev'd on other grounds, 3 N.J. 51, 68 A.2d 835, (1949). The lesser crime of false swearing does not involve this concept. Sworn intentional falsity is enough. Thus, the requirement of materiality may be satisfied not only by testimony that tends directly or circumstantially to prove an ultimate matter in issue (State v. Voorhis, supra) but also by testimony relating to a collateral matter which, if believed, has the capacity to affect the weight or force of the evidence bearing on an ultimate issue, and therefore has the capacity to influence the tribunal.

[State v. Winters, 140 N.J.Super. 110, 116-18, 355 A.2d 221 (Cty.Ct.1976).]
Thus, false testimony will be deemed material for a perjury conviction whenever it tends directly or circumstantially to prove the central matters in issue or if it establishes or disproves matters which themselves bear crucially on the central issues. If the alleged falsehoods are of collateral issues, the materiality requirement may be met by testimony relating to a collateral matter which, if believed, has the capacity to affect the weight or force of the evidence bearing on an ultimate issue and thus has the capacity to influence the tribunal hearing the judicial proceeding. See also State v. Molnar, 161 N.J.Super. 424, 450, 391 A.2d 1225 (App. Div.1978), rev'd in part on other grounds, 81 N.J. 475, 410 A.2d 37 (1980) (statements made before a grand jury could be considered material if they had a natural effect or tendency to "influence, impede, or dissuade" the grand jury from pursuing its investigation).
Here, it is quite true that the evidence that allowed the jury to evaluate the materiality of defendant's alleged falsehoods *732 was not extensive. In its case in chief, the prosecutor relied on a portion of the grand jury transcript during which the prosecutor, while questioning defendant, recounted the procedural predicate to his appearance, i.e., that he had been subpoenaed to testify "concerning the activities of the Board of Education and some of their members." The prosecutor also relied upon the areas of defendant's alleged perjury, as well as the evidence the prosecutor presented to prove the statements were false as that evidence was illustrative of the areas of the grand jury's investigationi.e. board member credit card misuse and improper expenses charged to or paid out of School Board monies.[2] Though minimal, we are convinced this was all the State needed. The questions to which defendant gave his perjurious statements related directly to subjects of the grand jury inquiry. How could it not be said that defendant's answers to the questions probing his knowledge of his obligation to substantiate his expenditures and of a board policy on expenses could have affected the grand jury's efforts to investigate the Board's practices and its members' activities on those very matters?
We comment briefly on defendant's contention that the evidence which established the scope of the grand jury's investigation, not objected to below, was impermissible hearsay. The simple answer is that the hearsay rules do not apply to facts that are not disputed and agreed to by the parties. N.J.R.E. 101(a)(4). It is a matter of unchallengeable fact that the Grand Jury was investigating the Board of Education and its members' practices and activities, including those relating to expenditures and reimbursements, cash/check advances and credit card charges. Defendant obviously acquiesced in the evidence of this.

III.

Prosecutorial Misconduct
Prosecutors are afforded considerable leeway in their closing arguments as long as their comments are reasonably related to the scope of the evidence presented. State v. Timmendequas, 161 N.J. 515, 587, 737 A.2d 55 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed.2d 89 (2001); State v. Frost, 158 N.J. 76, 82, 727 A.2d 1 (1999). See also State v. Smith, 167 N.J. 158, 770 A.2d 255 (2001). Although prosecutors may make vigorous and forceful closing arguments, their primary duty is not to convict but to see that justice is done. State v. Timmendequas, supra, 161 N.J. at 587, 737 A.2d 55; State v. Frost, supra, 158 N.J. at 82-83, 727 A.2d 1. Prosecutorial misconduct constitutes grounds for reversal when it is so egregious as to deprive the defendant of a fair trial. State v. Timmendequas, supra, 161 N.J. at 575, 737 A.2d 55; State v. Frost, supra, 158 N.J. at 83, 727 A.2d 1.
Defendant complains about two specific instances of misconduct here. The first occurred when the prosecutor stated that defendant's calling of character witnesses was "quite shameless." The prosecutor claimed that the evidence showed defendant to be a very shameless individual who could not care less about what he said or who he said it to. "And he should be really ashamed of himself that he would *733 put those character witnesses of his in the line of fire like that to come in and say good things about him when he knows he lied." There was no objection to these comments by defendant below and, thus, no opportunity offered to the trial judge to remedy the offending conduct. See State v. Timmendequas, supra, 161 N.J. at 576, 737 A.2d 55; State v. Frost, supra, 158 N.J. at 83, 727 A.2d 1. Nonetheless, we think the comments were egregious and deprived defendant of a fair trial.
Defendant's credibility, obviously, was key here and, thus, so was his reputation for honesty. Defendant had called five character witnesses to testify in his behalf. Two of these witnesses were religious leaders who knew defendant from church, one was someone who had known defendant since birth, one was someone who went to school with defendant, and one was a police officer who had known defendant since he was eleven. These witnesses testified as to their opinions of defendant to tell the truth and defendant's reputation for honesty in the community.
The prosecutor's comments cast aspersions upon defendant for calling these witnesses. This the prosecutor cannot do. State v. Frost, supra, 158 N.J. at 86, 727 A.2d 1; State v. Acker, 265 N.J.Super. 351, 356, 627 A.2d 170 (App.Div.), certif. denied, 134 N.J. 485, 634 A.2d 530 (1993); State v. Lockett, 249 N.J.Super. 428, 434, 592 A.2d 617 (App.Div.), certif. denied, 127 N.J. 553, 606 A.2d 366 (1991); State v. Sherman, 230 N.J.Super. 10, 16, 552 A.2d 621 (App. Div.1988). In our view, the comments also express the prosecutor's personal belief or opinion of defendant's guilt. This too he cannot do. Ibid. For example, in Sherman, we disapproved the prosecutor's accusation that the defendant had conspired with his attorney to conceal and distort the truth. Id. at 19, 552 A.2d 621. In State v. Acker, supra, 265 N.J.Super. at 356, 627 A.2d 170, the prosecutor impermissibly accused defense counsel of saying "outrageous" and "preposterous" things. In State v. Marshall, 123 N.J. 1, 160, 586 A.2d 85 (1991), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993), the prosecutor suggested that the defendant's sons had been called to testify solely to suggest support for their father, support that would have been unwarranted had the defendant killed their mother as the State alleged. The prosecutor expressed his revulsion at the defendant's "using" his sons in this manner to gain an acquittal. Ibid. The Court found that these remarks were inflammatory and beyond the bounds of forceful advocacy, though ultimately harmless. Id. at 161, 586 A.2d 85.
Here, the prosecutor could have made proper comments on the character witnesses' lack of truthfulness when they testified, or on their complete unfamiliarity with the events leading up to defendant's perjured grand jury testimony. However, that is not what the prosecutor did. Rather, he attacked not the witnesses themselves but defendant for having the audacity to call them. That is, the prosecutor did not suggest that the witnesses had lied or were not crediblea legitimate subject of prosecutorial summationbut that defendant shamelessly used the witnesses to attest to his honest character when he himself knew he had lied. Lying was the essence of the crime for which defendant was being tried. The prosecutorial excesses impacted directly upon defendant's ability to have that essence decided by the jury fairly and untainted.
The prosecutor also impermissibly asked the jury to hold defendant accountable for his betrayal of the children of Asbury Park. Specifically, he told the jury that this was defendant's day of reckoning and that *734 I'm asking you to held [sic] him accountable for what he did. I'm asking you to held [sic] him accountable for the lies that he told. I'm asking you to hold him accountable for the betrayal of his oath; not only the oath that he took in Grand Jury but his oath as a School Board member. And I'm asking you to hold him accountable for the betrayal of the children [of] Asbury Park.
[Emphasis added.]
Defendant did object to these remarks below and likens them to the "send a message to the community" or "call to arms" comments that have been found to be impermissible because they improperly divert jurors' attention from the facts of the case, State v. Rose, 112 N.J. 454, 520, 548 A.2d 1058 (1988), and intend to promote a sense of partisanship with the jury that is incompatible with the jury's function, State v. Goode, 278 N.J.Super. 85, 89, 650 A.2d 393 (App.Div.1994); State v. Holmes, 255 N.J.Super. 248, 252, 604 A.2d 987 (App.Div.1992). See also State v. Buscham, 360 N.J.Super. 346, 358, 823 A.2d 71 (App.Div.2003); State v. Acker, supra, 265 N.J.Super. at 356-57, 627 A.2d 170. We agree. Moreover, the theme was not fleeting. Earlier in his summation the prosecutor introduced this theme when he said to the jury: "You can see based on the testimony in this case that there was a time when [defendant] was on that Board of Education which was not a good time for the children of Asbury Park." The prosecutor also referred to defendant as having a "lack of courage," characterizing that as "especially egregious" because the voters "put their confidence in him so that he would take care of the children of Asbury Park." These comments were inflammatory, improper and had the capacity to deprive defendant of a fair trial.

IV.

Materiality Charge
Because there must be a new trial, we comment on the materiality jury charge. In part, that charge included the following language:
On the question of materiality, let me quote for you from our New Jersey Supreme Court in the case of State v. Anderson, 127 N.J. [at] 204, 205[, 603 A.2d 928]:
"There is nothing in the nature or quality of materiality which makes it essentially a legal concept or removes it from the ken, that is, the understanding of a layman's discernment and determination."
The word "material" and the idea of materiality are commonly understood. And everyday judgments on a variety of subjects are made upon the basis of a layman's sense of materiality.
This language, not in the Model Jury Charge on perjury, should not be included as part of the materiality instructions. In essence, it tells the jurors that materiality can mean whatever their own common sense tells them it means and totally obfuscates the requirement that the falsehoods were such as to have been capable of affecting the grand jury's investigation. While the Court did use this language in State v. Anderson, it did so only in the context of justifying its conclusion that the issue should be for the jury to decide, not for the judge as had previously been the prior practice. We do not believe the Court intended that language to become part of jury instructions on the subject.

V.
Reversed and remanded for new trial.
NOTES
[1] The Prosecutor's brief contains additional excerpts from defendant's grand jury testimony relating to the two perjurious statements we have set forth above. The additional excerpts, however, were not submitted to the jury as part of the alleged perjury. What we have set forth is what the jury was focused upon by the trial judge in the jury charge, without objection by the prosecutor.
[2] Defendant's own trial testimony was that, when he was subpoenaed to testify before the grand jury, there was a target notice attached to the subpoena which included the following language: "You are hereby advised that the Monmouth County Grand Jury is presently conducting an investigation into abuse of credit card and allowance and/or cash advance."