FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 08

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43262-5-II |
| Respondent, | |
| v. | consolidated with |
| EDWARD JASON CRABLE, | |
| Appellant. | |
| | No. 44316-3-II |
| In re Personal Restraint Petition of: | |
| EDWARD JASON CRABLE, | |
| Petitioner. | UNPUBLISHED OPINION |

MELNICK, J. — Edward Jason Crable appeals his conviction of violating a domestic violence court order, arguing that the prosecuting attorney committed misconduct during closing argument that violated his right to a fair trial. In the personal restraint petition consolidated with his appeal, Crable challenges the trial court's calculation of his offender score and argues that he received ineffective assistance of counsel when his attorney failed to challenge that calculation during sentencing. Because the prosecuting attorney's comments were not improper, we reject Crable's claim that he was deprived of a fair trial and affirm his conviction. And, because the trial court properly included Crable's prior misdemeanor offenses for violating a no contact order in his offender score, we reject his claims of sentencing error and ineffective assistance of counsel and deny his personal restraint petition.

FACTS

On October 21, 2011, Crable pleaded guilty in Pierce County Superior Court to two counts of violating a no contact order. The resulting sentence included an order prohibiting contact with Bridget Ann Warren.

Crable was released from jail several hours after his sentencing. Pierce County Deputy Sheriff Robert Shaw and Lieutenant Todd Karr watched to see where Crable would go and who he would contact.

Crable walked to a nearby McDonald's restaurant parking lot. When he got into a car parked next to Karr's unmarked patrol vehicle, Karr notified Shaw that he believed Warren was the driver. As the car drove by, Shaw confirmed that the driver was Warren. After Shaw stopped the car, the officers arrested Crable.

The State charged Crable with one count of violating a domestic violence court order with the aggravating factor that he committed the offense shortly after being released from incarceration. The information also alleged that Crable had two previous convictions for violating such orders, which increased the crime to a felony.

Shaw and Karr testified at Crable's trial about the investigation, stop, and arrest. Deputy Prosecutor Kara Sanchez then testified that she prosecuted Crable for his two earlier violations of a no contact order and explained that there was an order prohibiting contact with Warren as a condition of his sentence for those violations. Sanchez admitted that Warren did not want the no contact order and had written to the trial court asking that the order be amended to prohibit hostile contact rather than all contact.

Sanchez explained that the trial court had declined to enter such an order until Crable could be evaluated. She then read part of the prior sentencing transcript into the record:

2

It is very important that you follow the no contact order. I know you don't want to. I know she doesn't want to. You have two convictions now for violations of a no contact order. Even if she wants to have contact with you, you can't have any contact with her. If you are caught with her she doesn't go to jail, you go to jail. It is very important to do this.

That is another thing I look at when somebody comes before me and asks to have the no contact order modified, has the Court's previous order been followed. Have you had respect for this Court's order. I don't want to break up families, I don't want to break up support systems, but I want to be comfortable in the decision that I make.

Report of Proceedings (RP) (Feb. 15, 2012) at 166-67. Sanchez testified that Crable appeared to understand and that she served him with a copy of the no contact order. Sanchez added that at the end of the hearing, the court told Crable to call someone to pick him up but reminded him that he could not have contact with Warren. Sanchez admitted that she never told Warren that her request for a reduced order had been denied.

Warren testified for the defense that she was aware of the initial no contact order and knew that Crable was going to plead guilty to violating it. Warren explained that when Sanchez told her about his plea bargain, she told Sanchez that she wanted to have the no contact order removed or reduced to a "no hostile contact" order.[1] RP (Feb. 15, 2012) at 177.

Warren added that when she learned that Crable was going to be released from jail, she drove to the nearby McDonald's and figured that he would find her there. Warren testified that when she first saw Crable in the parking lot, he was "standoffish." RP (Feb. 15, 2012) at 179. But, when Warren reassured him that she had gotten the no contact order dropped to a no-hostile contact order, Crable got in the car. Crable testified that Warren told him the no contact order had been changed to a "no hostile contact" order. RP (Feb. 16, 2012) at 228.

---

[1] Such orders do not prohibit all contact but only hostile contact with the protected party. *See* *State v. Breitung*, 173 Wn.2d 393, 403, 267 P.3d 1012 (2011).

3

The prosecutor began her closing argument to the jury as follows:

> I told you early in opening this isn't the spiciest of cases. But in Washington, all over America crimes are to be zealously prosecuted when the facts are there supporting the law, that the—the violation of law that has occurred. And the plain, simple fact, I'm not minimizing this case at all. This case is important because when the State of Washington through its superior courts issue orders under which they have jurisdiction to parties, including Mr. Crable, those orders have meanings. We all have rules that we have to abide by every day. It's part of the social contract we enter into living in a society. And whether he likes it, whether Ms. Warren likes it, the rules were clear as they applied to Mr. Crable.
>
> As of October 21st, 2011 he was under no circumstance to have any contact with Ms. Warren. That's what this case is about. That—this does in fact mean something. Now, as jurors you've been given several rules throughout this case, what time to be here, strict rules about not discussing the case amongst each other, keep—
>
> [Defense Counsel]: Your Honor, I'm going to object. This has nothing to do with the evidence in this case. Asking the jurors to put themselves in the shoes of the defendant.

RP (Feb. 16, 2012) at 252-53. The trial court overruled the objection.

The prosecutor subsequently addressed the special verdict form asking whether Crable's offense occurred upon his recent release from incarceration:

> Jail is incarceration. And the State submits that's why this case, while not groundbreaking, earth shattering, it means something. You can't walk out of a sentencing and that very same day blatantly violate a court order. It's a slap in the face to the judicial system.
>
> [Defense Counsel]: Your Honor, I'm going to object to that statement. Counsel is trying to put her prestige behind its arguments. You're supposed to just be--

RP (Feb. 16, 2012) at 260. The trial court sustained the objection. RP 260.

The jury found Crable guilty as charged and answered "yes" to the special verdict forms asking whether he and Warren were members of the same family or household and whether Crable committed his offense shortly after being released from incarceration. Based on an offender score of 5, the trial court imposed a base sentence of 38 months and an additional 4 months for the aggravating factor. Crable now challenges his conviction as well as his sentence.

4

ANALYSIS

I.    PROSECUTORIAL MISCONDUCT

Crable argues in his direct appeal that the closing argument quoted above constituted prosecutorial misconduct that violated his right to a fair trial.

The burden is on the defendant to show that the prosecuting attorney's conduct was improper. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The prosecuting attorney has wide latitude in making closing argument to the jury and may draw reasonable inferences from the evidence. *State v. Gregory*, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006). We review allegedly improper comments in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given. *State v. Bryant*, 89 Wn. App. 857, 873, 950 P.2d 1004 (1998). If the statements were improper, and if they elicited an objection at trial, the defendant must show that the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760.

Crable complains about the prosecutor's arguments that court orders have meaning, that complying with them is part of the social contract, and that violating an order on the date of sentencing was a "slap in the face to the judicial system." RP (Feb. 16, 2012) at 260. Crable contends that with these arguments, the prosecutor was implying that the jury should send a message with its verdict as well as appealing to the jury's passions and prejudices.

"Send a message" language is prejudicial because it tells the jury to decide the case on an improper basis, diverts the jury from its true role of assessing the State's evidence, and promotes a sense of partnership with the jury that is incompatible with its function of deciding the case on the evidence rather than emotion. *See State v. Montjoy*, 366 N.W.2d 103, 108-09 (Minn. 1985) (prosecutor's emphasis on accountability potentially diverted jury from its role of deciding

whether the State had met its burden of proof); *State v. Neal*, 361 N.J. Super. 522, 537-38, 826 A.2d 723 (2003) (prosecutor's repeated exhortations to the jury to hold the defendant accountable constituted improper "send a message to the community" and "call to arms" comments that diverted jurors' attention from the facts and promoted an improper sense of partnership with the jury); *State v. Powell*, 62 Wn. App. 914, 918-19, 816 P.2d 86 (1991) (prosecutor's argument that acquittal would send a message that children who reported sexual abuse would not be believed, "thereby declaring open season on children," was prejudicial misconduct).

We first address the prosecutor's argument that the court order Crable was charged with violating had meaning and that the rules people live by are part of the social contract. Our Supreme Court found no misconduct when a prosecutor argued that "[i]t is important that our instructions not violate the *social contract* between us." *State v. Davis*, 141 Wn.2d 798, 872 n.396, 10 P.3d 977 (2000). Similarly, the statement that "we're a nation of laws" was meant to relay to the jury respect for the rule of law and was not an appeal to passion. *State v. Prado*, 144 Wn. App. 227, 251, 254, 181 P.3d 901 (2008). Finally, an argument describing a "lawful society" did not improperly ask the jury to convict in order to send a message about a lawless society. *State v. Smith*, 124 Wn. App. 417, 430-31, 102 P.3d 158 (2004), *affirmed on other grounds*, 159 Wn.2d 778, 154 P.3d 873 (2007). Although a prosecutor should not argue that the jury should convict to protect the community, asking the jury to act as the conscience of the community is not improper unless the intent is to inflame the jury. *State v. Finch*, 137 Wn.2d 792, 841-42, 975 P.2d 967 (1999); *State v. Ramos*, 164 Wn. App. 327, 338-39, 263 P.3d 1268 (2012).

We do not view the statements at issue as either improper pleas to the jury to send a message or improper appeals to the jury's passions. We note that defense counsel did not so interpret them at the time, as he objected only on the basis that the prosecutor was asking the jury to put itself in the defendant's shoes. By asserting that the underlying court order had meaning and that rules are part of the social contract, the prosecutor was asking the jury to take the case seriously and to uphold the rule of law. We reject this claim of prosecutorial misconduct.

The remaining statement at issue is the assertion that Crable's action in violating a court order on the day he was sentenced was "a slap in the face to the judicial system." RP (Feb. 16, 2012) at 260. Here again, we see no misconduct, even though the trial court sustained defense counsel's objection. Viewed in context, this argument was addressing the special verdict form setting forth the aggravating factor that the crime occurred shortly after Crable's release from incarceration. The prosecutor's argument addressed the rationale for the rapid recidivism aggravator and was not an improper appeal to passion or prejudice. *See State v. Butler*, 75 Wn. App. 47, 54, 876 P.2d 481 (1994) (defendant's rapid recidivism justified exceptional sentence by demonstrating greater disregard for the law than would otherwise be the case); *Lugo v. State*, 732 S.W.2d 662, 664 (Tex. Ct. App. 1987) (argument that probation "would be a slap in the face to law enforcement in this community" did not improperly appeal to community expectations or demands of a certain punishment and was not misconduct). Indeed, defense counsel objected only on the basis that the prosecutor was putting her prestige behind her arguments. We see no misconduct and reject this claim of error.

II.   OFFENDER SCORE

Crable argues in his personal restraint petition that the trial court erred by including misdemeanor offenses in his offender score and that he received ineffective assistance of counsel

7

when his attorney did not raise this error at sentencing. To be entitled to relief, Crable must show either constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-13, 792 P.2d 506 (1990).

RCW 9.94A.525 governs offender score calculations and provides as follows:

> Prior convictions for a repetitive domestic violence offense, as defined in RCW 9.94A.030, shall not be included in the offender score if, since the last date of release from confinement or entry of judgment and sentence, the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction.

RCW 9.94A.525(2)(f). A "repetitive domestic violence offense" includes a domestic violence violation of a no contact order under chapter 10.99 RCW that is not a felony offense, and a domestic violence violation of a protection order under chapter 26.09, 26.10, 26.26, or 26.50 that is not a felony offense. RCW 9.94A.030(41)(a)(ii), (iii). Each adult prior conviction for a repetitive domestic violence offense counts as one point in an offender score. RCW 9.94A.525(21)(c).

Crable was sentenced for twice violating a domestic violence no contact order under RCW 26.50.110 and RCW 10.99.020 on the day he committed his current offense. These misdemeanors were repetitive domestic violence offenses under the definition cited above, and because Crable had not yet spent 10 years in the community after his release before committing another crime, they counted as two points toward his offender score.

Crable's prior conviction of second degree assault also counted as two points, and the fact that he was on community custody at the time of his current offense contributed an additional point. RCW 9.94A.525(19), (21)(a). His offender score of five was correct.

8

Because Crable does not show that the trial court miscalculated his offender score, we need not address his claim of ineffective assistance of counsel based on the alleged sentencing error. *See In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (to establish ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that the deficiency was prejudicial). Crable does not show error that entitles him to relief. Accordingly, we deny his personal restraint petition and affirm his conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.