**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0140-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HECTOR L. RAMOS, a/k/a
HECTOR L. RAMOS-COLLAZO,
HECTOR L. CHIQUITTIN,
HECTOR COLLAZO,
HECTOR RAMOS, and
HECTOR L. CHIQUITIN,

    Defendant-Appellant.

_____

Submitted November 14, 2019 – Decided January 29, 2020

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 14-10-0867.

Joseph E. Krakora, Public Defender, attorney for appellant (Robert Carter Pierce, Designated Counsel, on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Hector Ramos was acquitted of the charge of first-degree leader of a narcotics network, N.J.S.A. 2C:35-3. The jury convicted him, however, of first-degree possession with intent to distribute heroin in a quantity of five ounces or more, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(1), and second-degree conspiracy to commit first-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1), 2C:35-5(b)(1), and 2C:5-2. Thirteen other persons were named in his indictment. Defendant was sentenced as a mandatory extended-term offender on the merged charges on August 1, 2017, see N.J.S.A. 2C:43-6(f), to forty-five years imprisonment subject to a twenty-two-and-one-half-year term of parole ineligibility. We affirm, except we remand as to the sentence imposed.

The testimony of numerous witnesses presented by the State at trial established that defendant and his co-defendants were the subject of surveillance over the course of several months. The investigating authorities obtained a wiretap order permitting the monitoring of defendant's text messages and calls, which were intercepted for approximately a month. At trial, the jury heard recorded conversations between defendant and his co-defendants regarding drug

transactions. A search warrant was obtained and executed for defendant's van. From that vehicle, police seized 7712 clear Ziploc baggies with blue wax paper folds inside, stamped "White House," containing heroin. The drugs' total weight was 214 grams. Police also seized $8200 in cash and another 140 baggies also containing blue wax paper folds stamped "White House" from defendant's camper. Although investigators assumed the contents were heroin, those baggies were not tested.

Defendant waived his Miranda[1] rights, and made an inculpatory statement to police in which he admitted having approximately 550 bundles of heroin in his van as well as cash earned from the drug trade in his trailer. He named one of his co-defendants as his supplier, and said that he only sold "White House" heroin. Defendant explained that he would pass on the drugs he obtained from his supplier to four or five people who would sell for him, including Toby Simmons, whom he specifically named.

One of defendant's street sellers, a co-defendant and a drug user, Maritza Jenkins, testified at trial that she had sold drugs for defendant since 2014. He would front her the drugs, and she would give him the sales proceeds. Police intercepted phone calls between the two, and about nine were played to the jury

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0140-17T4

while she was on the stand. She identified defendant as the person at the other end of the line.

Pre-trial, the judge discussed with counsel the necessity to carefully instruct the jury regarding the wiretap evidence and the search warrants. It was agreed that although the State was entitled to inform the jury that the intercepts and the searches were judicially sanctioned, the judge needed to charge the jury that they could not use the issuance of search warrants or wiretap orders as evidence of guilt. Counsel agreed to work together to arrive at a limiting instruction on the issue. The judge discussed the proposed language during the charge conference. The judge instructed in his closing charge as follows: "Additionally, you have heard testimony regarding court authorization for wiretap and search warrants. The underlying basis for these court orders is not for your consideration. You may not use this testimony in your determination of the defendant's guilt or innocence of these charges."

During the trial, one of the investigators testified that defendant's associates, including Toby Simmons, were identified as a result of the intercepts and the surveillance. Counsel objected to Simmons and others being named on the basis of relevance. The State responded that the name, like those of others,

A-0140-17T4

was mentioned by defendant in his inculpatory statement. The jury heard the statement.

In summation, the prosecutor commented, "When you have the facts, you argue the facts. When you don't have the facts, you argue the investigation." In addition, while acknowledging that the substances seized from defendant's trailer were not tested for heroin, the prosecutor referred to the 140 baggies as containing heroin. Defendant had said the baggies contained heroin in his statement.

The prosecutor repeatedly advised defendant on the record of the State's intent to seek extended-term sentencing if he were convicted. During the pretrial conference, defendant acknowledged his exposure to that mandatory extended term. The mandatory extended-term application must be filed and served within fourteen days of conviction, see R. 3:21-4(e), but was not filed until July 25, 2017, over a month after the jury returned its guilty verdicts. Because the prosecutor had informed defendant of the State's intent to seek extended-term sentencing pursuant to the mandatory sentencing provisions of N.J.S.A. 2C:43-6(f), the judge found good cause to allow the late filing and sentenced defendant accordingly.

Now on appeal, defendant contends the following:

A-0140-17T4

POINT I
MR. RAMOS WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE STATE REPEATEDLY PRESENTED TESTIMONY THAT A JUDGE GRANTED LAW ENFORCEMENT AUTHORITIES THE RIGHT TO OBTAIN ELECTRONIC WIRETAP SURVEILLANCE OF MR. RAMOS' PHONES AND THAT THERE WAS A "COURT ORDERED" SEARCH WARRANT FOR MR. RAMOS' VAN AND TRAILER HOME PRIOR TO HIS ARREST.

POINT II
THE TRIAL COURT ERRED BY ALLOWING DETECTIVE HOLT TO PROVIDE EXPERT TESTIMONY THAT "TOBY SIMMONS" WAS WORKING FOR MR. RAMOS TO TRAFFIC IN NARCOTICS.

POINT III
THE PROSECUTOR COMMITTED MISCONDUCT DURING SUMMATION BY STATING THAT (A) WHEN THE DEFENSE DOES NOT HAVE THE FACTS YOU ARGUE THE INVESTIGATION AND (B) THE STATE DID NOT TEST THE ALLEGED HEROIN SEIZED FROM MR. RAMOS' TRAILER BECAUSE IT REALLY WASN'T NECESSARY.

POINT IV
THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE STATE'S MOTION FOR THE IMPOSITION OF AN EXTENDED PRISON TERM OUT-OF-TIME.

POINT V
THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

6

I.

Defendant's first point on appeal, that references to wiretap surveillance of his phone, and the search warrants for his van and trailer home were unduly prejudicial, lacks merit. Our standard of review on this issue is plain error. See R. 2:10-2. We will not reverse unless the alleged error raises a reasonable doubt as to whether it led the jury to a result it might not have otherwise reached. State v. Daniels, 182 N.J. 80, 95 (2004). During some jury trials, there is no alternative to references to search warrants to explain police conduct. State v. Cain, 224 N.J. 410, 435 (2016) ("[A] search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily."). A prosecutor cannot, however, emphasize a judge's involvement in the issuance of warrant "if doing so creates the likelihood that a jury may draw an impermissible inference of guilt." Ibid.

That certainly did not happen here. The prosecutor was scrupulous in avoiding mention of the wiretaps or search warrants, and when unavoidable, did so carefully.

Both counsel had no realistic choice but to acknowledge that since defendant's arrest and the seizure of the narcotics resulted from an ongoing

broad-based investigation, mention of the wiretap and search warrants was unavoidable.  For that reason, counsel and the court discussed the issue on the record, and the lawyers fashioned an appropriate instruction, which the judge gave to the jury.  Any prejudice resulting from the jury being advised of judicially authorized intercepts and warrants was adequately addressed by the judge's charge which was collaborated on, and agreed to, by both parties.  We assume that a jury follows instructions and that this jury did so.  State v. Marshall, 173 N.J. 343, 355 (2002).  Thus, references to the wiretap order and search warrants in this case were not capable of producing an unjust result.

II.

Defendant now argues on appeal that the investigator's mention of Toby Simmons was unduly prejudicial.  Counsel objected at the time, but on the basis of relevance.  Simmons was not charged in the indictment, nor was defendant indicted for any offense involving him.  Defendant contends that the officer's reference to Simmons as a street dealer employed by defendant violated the proscription against evidence of other crimes being introduced at trial.

The Cape May County Prosecutor's Office lieutenant who testified as an expert witness in the field of narcotics, referred to Simmons and another person identified by defendant in his inculpatory statement as individuals who sold

drugs on defendant's behalf. Nothing else was said about Simmons's involvement.

The State responds that Simmons's identification as a seller was merely testimony intrinsic to the charge of being a leader of a narcotics network. In State v. Rose, 206 N.J. 141, 177 (2011), the Court held, among other things, that evidence intrinsic to a charged crime "is exempt from the strictures of Rule 404(b)." That certainly is true in this case where the actual charge is defendant's distribution of drugs to others for sale on the street.

In any event, the objected-to testimony was nothing more than a reiteration of defendant's inculpatory statement regarding his street sellers, and is probative of one or more of the statutory elements of the crime of being the leader of a narcotics network. The passing reference had probative value that was not substantially outweighed by the risk of undue prejudice. See N.J.R.E. 403. It could not have prejudiced defendant any more than the State's other proofs—such as Jenkins's testimony about selling drugs for defendant.

III.

Defendant did not object at the time of trial to the prosecutor's statements he now argues were unduly prejudicial. Thus, it is his burden to establish that they were clearly capable of producing an unjust result. See Daniels, 182 N.J.

9

at 95. The offending remarks must have been so egregious as to have deprived him of a fair trial. State v. Neal, 361 N.J. Super. 522, 535 (App. Div. 2003). Our review of the record establishes the remarks were simply not prejudicial at all.

A prosecutor is allowed to present forceful arguments on behalf of the State. State v. Frost, 158 N.J. 76, 82 (1999). That the prosecutor observed that defendant's defense was an attack on the investigation, not the facts, was fair comment. That was the defense theory—an attack on the investigation in a case with overwhelming State's proofs, including direct testimony against defendant, recordings of him engaging in the business of drug dealing, and his own confession.

For the prosecutor to have also observed that the State did not test the heroin seized from the trailer because it was not necessary was similarly unobjectionable. When defendant confessed, he said he only sold heroin marked "White House." Defendant told the interviewing officers that there was heroin packaged in a similar manner in the trailer, and he described where it was hidden. When officers searched the trailer, the baggies containing blue wax paper folds were located where he said they would be found. Thus, there was evidence that the folds discovered in defendant's trailer were, at least in

A-0140-17T4

defendant's opinion, illegal substances. A very substantial quantity of similarly packaged drugs was tested. The prosecutor's passing reference was unremarkable in light of defendant's statement and other proofs in the case. In any event, the heroin seized from defendant's van, which was tested, exceeded the statutory requirement of five ounces or more. This comment was not error at all, certainly not error clearly capable of producing an unjust result.

## IV.

Defendant contends the court should not have imposed an extended-term sentence because the State filed out of time. He also argues the sentence was unduly excessive and punitive.

At sentencing, the State did not offer an explanation for the late filing. Instead, the prosecutor argued that defendant was well aware that the State would be seeking an extended sentence, and that the extended term was mandatory.

The record supports the State's claim that defendant knew, prior to the motion, that he was subject to extended-term mandatory sentencing up to life imprisonment. Failure to impose a statutorily mandated sentence is itself an illegal sentence. State v. Acevedo, 205 N.J. 40, 45 (2011). Nonetheless, the

A-0140-17T4

State is required to file written notice of the motion for extended-term sentencing within two weeks of conviction.

Defendant, who was forty-five years old when convicted, had been found guilty of a robbery in 1992 in Puerto Rico, a disorderly persons attempted theft in 2001, and a second-degree drug distribution in 2002, for which he was sentenced to state prison. The judge found no mitigating factors, only aggravating factors three, six, and nine. N.J.S.A. 2C:44-1(a)(3), (6), (9). He gave all the aggravating factors substantial weight. A mandatory first-degree drug distribution sentence ranges from twenty years to life in prison.

The court accorded substantial weight to aggravating factor three because defendant had been previously convicted of selling drugs on one occasion, and also gave substantial weight to aggravating factor six for the same reason. Finally, the judge attributed very substantial weight to factor nine because the prior term of incarceration had not deterred defendant and was necessary to deter him and the public from distributing drugs.

Sentences are reviewed deferentially. State v. Lawless, 214 N.J. 594, 606 (2013). We ask only if legislative guidelines have been followed, if competent credible evidence supports each finding of fact upon which the judge based the sentence, and whether application of the facts to the law is a clear error of

judgment which shocks the judicial conscience. State v. Roth, 95 N.J. 334, 364-65 (1984).

The statutory aggravating and mitigating factors relied upon by a sentencing judge must be fully supported by the record. The purpose served by these statutory considerations is to advance the goal of uniformity in sentencing. State v. Blackmon, 202 N.J. 283, 296 (2010). They create a common framework for all judges. State v. Case, 220 N.J. 49, 63-65 (2014). Balancing the aggravating and mitigating factors is more than just counting whether one set of factors outnumbers the other. Id. at 65. The court must qualitatively assess them, assigning appropriate weight to each. Ibid.

In this case, the judge found aggravating factors three and six had substantial weight based on a relatively minimal prior criminal history, a qualitative assessment not fully supported by the record. In light of the quantity of drugs defendant possessed at the time of arrest, it was not improper to give substantial weight to factor nine. However, the factor is present in every case, and hardly entitled to substantial weight except where "particular emphasis" is explained. See Case, 220 N.J. at 68. It is not clear how the fifty-year sentence was necessary to deter defendant specifically when a lesser sentence can have the same deterrent effect. It is not clear to us that defendant's relatively limited

prior criminal history, admittedly including one similar offense, even in the absence of mitigating factors, warrants a sentence that at best will see defendant released from state prison at age sixty-seven. For that reason, we remand for the judge to revisit the weight he accorded the aggravating factors. We do not suggest the number of years to which defendant should be sentenced, but only that a comparatively scant criminal history may not warrant the substantial weight the judge assigned to aggravating factors three and six.

Affirmed, except remanded as to the sentence.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0140-17T4